**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DEBORA COBB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO: 3:17-cv-01629-VLB |
| v. | ) |
| | ) |
| ENHANCED RECOVERY COMPANY, | ) |
| LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**SMITH, GAMBRELL & RUSSELL, LLP**

*/s/ Scott S. Gallagher*
**Scott S. Gallagher, Esq**
**PHV Bar Number: phv08629**
**50 North Laura Street, Suite 2600**
**Jacksonville, Florida 32202**
**Phone: (904) 598-6111**
**Fax: (904) 598-6211**
**Email: sgallagher@sgrlaw.com**
*Admitted Pro Hac Vice*

**and**

**Michael P. Regan**
**1301 Avenue of the Americas, 21st Floor**
**New York, New York 10019**
**Tel. (212) 907-9720**
**mregan@sgrlaw.com**

*Attorneys for Defendant*

## TABLE OF CONTENTS

I.    Introduction...............................................................................1

   A.  Issue before the Court ...............................................1

   B.  Legal Standard ...............................................................1

II.   Defendant's Use of *ERC* is consistent with the Act ...............................2

   A.  Ms. Cobb's claims are inconsistent with the stated purpose of the FDCPA………………………………………………………….2

   B.  The use of *ERC* complies with both FTC guidance and the various judicial rules of determining a collector's "true name." ......5

      1.  FTC guidance states that collectors may use names under which they usually transact business or a commonly-used acronym...........................................................................5

      2.  Out of district case law establishes that collectors may use names registered as fictitious names...........................6

      3.  The use of *ERC* in the Letter complies with the FTC Guidance and out of district case law............................8

      4.  The use of *ERC* in the Letter complies with District of Connecticut case law, which permits use of names listed in the collector's Connecticut Consumer Collection Agency license.............................................................10

   C.  Even if it were not Defendant's true name, no violation can be based on the use of *ERC* in the Letter because any alleged misrepresentation would be immaterial.............................15

III.  *ERC* has, in fact, been held to be a true name for Defendant ...........17

IV.   Even if ERC were required to register with town clerks, its failure to do so would not violate the Act........................................20

   A.  ERC was not required to file an assumed name certificate under Connecticut law ...................................................21

i

**B. Even if ERC had been required to file an assumed name certificate, the failure to do so would not violate the Act**..................................................................................**27**

**V.    Conclusion** …………………………………………………………………**.32**

I.      <u>Introduction</u>

A.  <u>Issue before the Court</u>

The Fair Debt Collection Practices Act (the "FDCPA" or the "Act") prohibits a collector from using names other than a true name when collecting an overdue consumer account. Ms. Cobb received a letter from Enhanced Recovery Company, LLC bearing the name *ERC.* Enhanced Recovery Company is licensed to provide consumer collection services under the name *ERC* in, among other places, Florida, where it is located, and Connecticut, where Ms. Cobb received the letter. The single issue presented here is whether the use of the trade name "*ERC*" was a violation of the FDCPA.

B.  <u>Legal Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the litigation under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, (1986).

If the party moving for summary judgment demonstrates the absence of genuine issues of material fact, then the burden shifts to the non-movant to come forward with admissible evidence sufficient to support each essential element of the claim, and "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In opposing a motion for summary judgment, the non-movant may not merely rely on unsupported

assertions, conjecture or surmise. *See Goenaga v. March of Dimes Birth Defects Found.*, 51 F. 3d 14, 18 (2d Cir. 1995).

II.      <u>Defendant's use of *ERC* is consistent with the Act.</u>

Ms. Cobb claims that Enhanced Recovery Company, LLC (Defendant or "ERC") violated section 1692e(14) of the FDCPA by using its initials, *ERC*, in a letter sent to her in July 2017 (the "Letter") rather than the full corporate name, Enhanced Recovery Company, LLC. ERC is entitled to judgment as a matter of law on Plaintiff's claim because the undisputed facts demonstrate ERC did not violate the Act.

Ms. Cobb's attempt to impose liability on ERC in this case for conduct that misled no one is inconsistent with the purpose of the Act, its general prohibitions, and the standards developed to enforce those prohibitions. Moreover, the use of *ERC* in the Letter was not a misrepresentation at all; its use is entirely consistent with long-standing agency guidance and the several judicial tests developed to determine whether a name is a "true name" for a collector.

A. <u>Ms. Cobb's claims are inconsistent with the stated purpose of the Act.</u>

The Act was enacted in 1977 to "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The provision of law Ms. Cobb claims ERC violated, 15 U.S.C. § 1692e(14), is a subsection of the Act's broad prohibition against deceptive and misleading conduct. *See* 15 U.S.C.A. § 1692e (2017). Subsection 14

prohibits "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." 15 U.S.C.A. § 1692e(14) (2017).

Although the term "true name" used in the section is not defined, the Supreme Court noted that "its import is straightforward: A debt collector may not lie about his institutional affiliation." *Sheriff v. Gillie*, 136 S. Ct. 1594, 1602 (2016). In *Gillie*, the Court held that collectors' use of the creditor's letterhead did not violate section 1692e(14) where the relationship between the parties was explained in the letter. *Gillie*, 136 S. Ct. at 1602. It reasoned that, "[f]ar from misrepresenting [the collectors'] identity, letters sent by [the collectors] accurately identify the office primarily responsible for collection of the debt (the [creditor]), [the collectors'] affiliation with that office, and the address ([the collectors'] law firm) to which payment should be sent." *Id.* Unsurprisingly, in finding no liability under section 1692e(14) for the collectors, the Court interpreted this provision consistent with the stated purpose of the Act as well as the general prohibition of the broader section in which it is found.

The Circuit Courts of Appeals have adopted two standards applicable to claims under section 1692e specifically tailored to effect these purposes, the least sophisticated consumer and materiality standards. The least sophisticated consumer standard is an objective standard for evaluating a collector's communication, which asks how the least sophisticated consumer would view an allegedly offending communication. This standard, and its policy underpinnings, was described by the Second Circuit in *Jacobson*:

3

in addition to protecting consumers against deceptive debt collection practices, the objective test we apply protects debt collectors from unreasonable constructions of their communications. Even in "crafting a norm that protects the naïve and the credulous," we have "carefully preserved the concept of reasonableness." Accordingly, the [Act] does not aid plaintiffs whose claims are based on 'bizarre or idiosyncratic interpretations of collection notices."

*Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008) (*quoting Clomon v. Jackson*, 988 F.2d 1314, 1418-20 (2d Cir. 1993)). This standard "does not conflate lack of sophistication with unreasonableness." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010).

Additionally, the Second Circuit has recognized a materiality standard under section 1692e. *See Gabriele v. Am. Home Mortg. Serv., Inc.*, 503 Fed. Appx. 89, 94 (2d Cir. 2012). In *Gabriele*, the Second Circuit held that the false statements complained of were not of the type that the Act was meant to protect against. *Id.* at 95. In finding no liability for the collector, the Second Circuit noted that the alleged misstatements were "mere technical falsehoods that misled no one." *Id.* (*quoting Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)). This standard has been applied in this Circuit such that, to violate section 1692e of the Act, a communication must be capable of misleading a consumer as to the nature and legal status of the underlying debt or impede a consumer's ability to respond to, or dispute, collection letters. *See, e.g., Vallecastro v. Tobin, Melien & Marohn*, No. 3:13-cv-1441(SRU), 2015 WL 6478412, at *6 (D. Conn. Oct. 27, 2015); *Fritz v. Resurgent Capital Servs., LP,* 955 F. Supp. 2d 163, 170 (E.D.N.Y. 2013) *Castro v. Green Tree Serv., LLC*, 959 F. Supp. 2d 698, 711 (S.D.N.Y. 2013).

4

B. **The use of *ERC* complies with both FTC guidance and the various judicial rules for determining a collector's "true name."**

1. **FTC guidance states that collectors may use names under which they usually transact business or a commonly-used acronym.**

In its long-standing guidance on compliance with the Act, the Federal Trade Commission ("FTC") identified various acceptable names a collector may use. A debt collector:

> may use its full business name, the name under which it usually transacts business, or a commonly-used acronym. When the collector uses multiple names in its various affairs, it does not violate [§ 1692e(14)] if it consistently uses the same name when dealing with a particular customer.

Federal Trade Commission, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50107 (1988) [hereinafter FTC Commentary].

Although the FTC Commentary is not binding on courts, it has been consistently cited as persuasive authority. For example, the Second Circuit Court of Appeals has repeatedly looked to this guidance in ruling on claims arising under the Act. *See Vincent v. Money* Store, 736 F.3d 88 (2d Cir. 2013); *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 237 (2d Cir. 1998) (*citing* FTC Commentary).[1] In *Vincent*, the Second Circuit expressly noted that it looks to the FTC's informal opinions as persuasive authority. *Vincent*, 736 F.3d at 101 n.12.

---

[1] Although the FTC lost regulatory authority over the Act upon the creation of the Consumer Financial Protection Bureau in 2010, the FTC still retains authority to enforce the Act. *See* 15 U.S.C.A. § 1692*l* (2017). Thus federal courts continue to give weight to the FTC Commentary following the FTC's reduction in authority. *See Leonard v. Zwicker & Assocs., P.C.*, No. 17-10174, 2017 WL 4979160, at *3 (11th Cir. Nov. 1, 2017) (according "considerable weight" to the FTC Commentary); *Vincent*, 736 F.3d at 101 n.12; *Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1075 (7th Cir. 2011) (giving "respectful consideration" to the FTC Commentary).

2. **Out of district case law establishes that collectors may use names registered as fictitious names.**

Guided by the Act's policy considerations and the FTC Commentary, courts have developed several related tests for determining whether a collector used a true name when communicating with a consumer. Cases that find a violation of a section 1692e(14) "typically involve a debt collector misrepresenting its identity, such as by purporting to be the creditor when it is not, purporting to be a government agency when it is not, or purporting to be distinct from the creditor when it is not." *Mahan v. Retrieval-Masters Credit Bureau, Inc.*, 777 F. Supp. 2d 1293, 1300 (S.D. Ala. 2011). In *Mahan*, the court held that it did not violate the section for the collector, Retrieval-Masters Credit Bureau, to use the trade name American Medical Collection Agency when communicating with the plaintiff. The Alabama district court took judicial notice of a public record from the New York Department of State showing that the collector had registered to do business in that state, presumably its principal place of business, under the subject name in 1987. *Id.* at 1298.

The *Mahan* court reasoned "the fundamental point is that, as one district court recognized, '§ 1692e(14) at its core clearly prohibits the use of a name that is neither the collector's actual corporate name nor its trade name, licensed or otherwise.' " *Id.* at 1301 (*quoting Boyko v. Am. Int'l Grp., Inc.*, No. 08-2214 (RBK/JS), 2012 WL 2132930, at *6 (D.N.J. June 12, 2012)). The court granted the motion to dismiss, finding that there were no facts pleaded in the complaint to suggest that the use of the name registered in New York "was intended to or had the effect of, confusing, misleading or deceiving [the plaintiff]." *Id.*

6

Where a trade name is registered, it does not violate section 1692e(14), or other provisions, of the Act to use such name, even where it is registered in a state other than where the subject communication is directed. *Velez v. Healthcare Revenue Recovery Grp., LLC*, No. 1:16-cv-377, 2017 WL 1476144 (M.D.N.C. Apr. 24, 2017). In *Velez*, the plaintiff brought a putative class action claiming that a collector used a false name in a letter because the trade name it used was not registered in the plaintiff's state. The court dismissed the claim, finding the subject name was a "true name" because the collector registered the name in Florida as a trade name. Relying on the Florida registration, the court reasoned:

> Because both North Carolina and Florida law permit businesses to use an assumed or fictitious name, . . . the allegations contained in the [c]omplaint do not plausibly establish that [the collector] somehow misrepresented or lied about its affiliation with ARS by sending a letter under an assumed business name.

> Consistent with that conclusion, it is undisputed that [the collector] has registered its fictitious name, ARS, in the State of Florida as evidenced by the public filing attached to [the collector's] brief.

*Id.* at *5-6. The court further found that there were no allegations that the use of the trade name was false, deceptive or misleading, finding that the plaintiff had not "alleged that [the collector] used the separate names interchangeably, for some deceptive or misleading purpose, so that [the plaintiff] was in fact misled." *Id.* at *6. And the court rejected the argument that failing to register the name as a fictitious name in North Carolina would violate the Act. *Id. See also Boyko*, 2012 WL 2132930, at *3 ("the Court holds that a debt collection company may excuse itself from liability under section 1692e(14) where it properly registers its incorporated name and any alternate trade names in any of 1) the debt collection

7

company's place of incorporation, 2) the debt collection company's principal place of business, or 3) the state in which the plaintiff was injured.").

    **3.** **The use of *ERC* in the Letter complies with the FTC Guidance and out of district case law.**

      Consistent with FTC Commentary and federal case law, the use of *ERC* in the Letter does not violate the Act. It cannot be disputed that *ERC* is an acronym for Enhanced Recovery Company, ERC's full corporate name. The FTC Commentary specifically identifies using acronyms for corporate names as permissible under the Act.

      Moreover, as was true in *Velez* and *Mahan*, where the courts rejected claims for violation of section 1692e(14) because the name used had been registered as a fictitious name, *ERC* is, in fact, a registered fictitious name for Defendant. *ERC* is registered as a fictitious name for Enhanced Recovery Company, LLC with the Florida Secretary of State, and it was so registered at the time it sent the Letter. *See* Davis Decl. at ¶ 3, Exh. A. Furthermore, *ERC* has also been registered with the Florida Office of Financial Regulation and appears on ERC's license as a "Consumer Collection Agency" issued from that office. *See id.* at ¶ 6, Exh. B. ERC is registered as a fictitious name in the State of Delaware, where ERC is incorporated, and was registered as a trade name with the Connecticut Banking Department.[2] *Id.* at ¶¶ 8-10, Exh. D, Exh. E.

      Moreover, *ERC* is registered with the United States Patent and Trademark office as a service mark used by Enhanced Recovery Company, LLC for debt

---

[2] The registration of the trade name ERC in each of Florida, Delaware and Connecticut satisfies not just one but all three of the alternatives set forth in *Boyko,* 2012 WL 2132930, at *3.

recovery services. *See* ERC, Registration No. 5,169,227. *See also* Davis Decl. at ¶ 7, Exh. C. The registration certificate for this registration further indicates that Defendant filed for registration in June 2015 and has been using the name *ERC* in connection with such services since 1999. *See* ERC, Registration No. 5,169,227; Davis Decl. at ¶ 13, Exh. C*.*

Federal registration of a trademark is *prima facie* proof that the registrant has exclusive rights to use the mark in connection with the goods or services for which the registration has issued. *See* 15 U.S.C. §§ 1114, 1115(a). As the registrant of the mark "ERC," Defendant has the *exclusive* right to use the name *ERC,* or any similar name, in providing debt collection services, nationwide. Accordingly, the use of *ERC* on its letters is not false, and as a matter of law, could not mislead or confuse Ms. Cobb, or anyone else, as to the identity of ERC as the sender of the collection Letter.

Further, the FTC recognized that a collector is permitted to use any name under which it regularly conducts business. Ms. Cobb does not allege or suggest in the complaint that ERC does not actually conduct business under the name *ERC.* And, in fact, the Letter shows just the opposite: ERC regularly conducts business under that name and used that name consistently in attempting to collect on her overdue account concerning a Target brand credit card. The Letter comports with ERC's regular practices, to use the acronym ERC in attempting collection.[3]

---

[3] Decl. of J. Davis at ¶ 13.

9

### 4. The use of *ERC* in the Letter complies with District of Connecticut case law, which permits use of names listed in the collector's Connecticut Consumer Collection Agency license.

Further, and perhaps most importantly, *ERC* is licensed as a trade name under which Defendant provides services *in this state* as a consumer collection agency with the Connecticut Banking Department. *See* Davis Decl. at ¶ 8-9, Exh. D; Landoll Decl. at ¶ 6-7, Exh. A; Costa Cert. at 1, Exh. A. A court sitting in this District has expressly held that a name listed on a collector's license from the Connecticut Banking Department is the collector's "true name" for the purposes of section 1692e(14) of the Act. *Kizer v. Am. Credit & Collection*, Civ. No. B-90-78 (TFGD), 1990 WL 317475, at *6 (D. Conn. Dec. 17, 1990). In *Kizer*, the plaintiff, represented by Ms. Cobb's counsel here, argued that no trade name could be considered a "true name" under the Act. The court expressly rejected this argument and held that "the name under which a debt collector is licensed to do business in the state of Connecticut is the debt collector's true name for purposes of the [Act]." *Id.* It reasoned that this interpretation was consistent with the purpose of the Act and that using names registered with, and licensed by, the Connecticut Banking Department does not deceive the public. It further reasoned that obtaining a collections license in Connecticut subjects the collector to the "state's regulatory scheme intended to provide an additional means of enforcing substantive regulation of debt collection" and as part of this scheme, the collection agency act prohibits the collector from using names other than those

10

included in the license. *Id.* In so holding, the court noted that its interpretation was consistent with the FTC Commentary which permits the use of trade names.[4]

Since August 2015, twenty-three months before sending the Letter, *ERC* has been a registered trade name under which Defendant is permitted to provide collection services in the state of Connecticut. Carmine Costa, Director of the Consumer Credit Division of the State of Connecticut, Department of Banking, confirms that on August 3, 2015, Defendant applied to add *ERC* as a licensed trade name in Connecticut and on August 4, 2015, its status was updated to reflect the trade name. Costa Cert. at 1, Exh. A.  Director Costa further confirms that the Nationwide Multistate Licensing System & Registry (NMLS) is authorized to process applications for collection agency licenses in Connecticut and maintain the records relating to those licenses. *Id.* at 1.

In fact, when visiting the Department's website and choosing the Verify a License function, the site redirects to the NMLS Consumer Access website to complete the search. Davis Decl. at ¶¶ 24-25. Searching for *ERC* on this website discloses a single entity in the nationwide database, Defendant, who is licensed under the name *ERC* to provide collection services. *Id.* at ¶26.[5] The Connecticut

---

[4] The court ultimately denied summary judgment for the collector, however, due to an issue of fact as to whether the collector was indeed licensed to provide such services. Id. at *7. This is not a concern here as there is no dispute of fact: Defendant is licensed in Connecticut and ERC appears as a licensed trade name on Defendant's Connecticut collection agency license.

[5] The absence of other entities is not surprising considering that the United States Patent and Trademark Office granted Defendant the exclusive right to use ERC in connection with collection services nationwide.

11

record accessed from these results reflects that Defendant is licensed to provide services in Connecticut under the trade name *ERC*. *Id.* at ¶ 28, Exh. D.[6]

Moreover, Defendant, consistent with the FTC's guidance, consistently used *ERC* when communicating with Ms. Cobb concerning her account. In response to requests for admission, Ms. Cobb failed to respond to a request for admission that Defendant consistently used "ERC" when communicating with her. *See* Gallagher Decl. at ¶ 3, Exh. A at No. 5. As a result, it is deemed admitted under Rule 36. Fed. R. Civ. P. 36.[7] Even absent this deemed admission, however, Ms. Cobb only identified *ERC* when asked to list all names that Defendant used when communicating with her. Gallagher Decl. at ¶ 5, Exh. B at No. 14. The FTC Commentary clarifies that a collector is permitted to use multiple names in conducting its business as long as "it consistently uses the same name when dealing with a particular customer." FTC Commentary at 50107. Likewise, the Supreme Court has recognized the prohibition on using false names is intended to prevent misrepresentations regarding the affiliation of an entity. Thus, there is nothing inappropriate where, as here, a collector consistently uses the same name in communications with a consumer and instructs a consumer to send correspondence or payments directed to its name and address.

---

[6] This Court may take judicial notice of the NMLS licensing records. *See, e.g.*, *Cruz v. Credit Control Servs., Inc.*, 2:17-cv-1994 (ADS)(GRB), 2017 WL 5195225, at *3 (E.D.N.Y. Nov. 8, 2017) (taking judicial notice of NMLS licensing records on a motion to dismiss to find the collector was licensed under its trade name to provide collection services); *Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 510 (D. Md. 2013) (taking judicial notice of collector's licensing status represented on NMLS).

[7] Counsel for Defendant brought the lack of response to the attention of counsel for Plaintiff who then acknowledged that the matter is admitted by Plaintiff.

The Letter reflects it was sent by *ERC*. It does not use any name other than *ERC*; nor does the Letter contain any language to mislead the consumer into believing that the Letter originated from anyone other than a collector referred to as *ERC*. It does not create a false sense of urgency. And any purported confusion as to the identity of *ERC* is vitiated by the inclusion of ERC's contact information in the Letter. The Letter provides ERC's corporate address, which it lists as "ERC, 8014 Bayberry Road, Jacksonville, FL 32256," and provides contact information for consumers to make payments, send disputes, or otherwise contact it. Davis Decl. at ¶ 17; Am. Compl. at ¶ 9, Exh. 1. The Letter does not ask Ms. Cobb to go and find this information for herself. As the Supreme Court found in *Gillie*, the letters here provide clear information on how to contact the collector and therefore do not violate section 1692e(14). *Gillie*, 136 S. Ct. at 1601-02.

The above authority discusses several related standards to determine compliance with the "true name" provision of the Act, section 1692e(14):

  a.  A true name is a collector's full business name, the name under which it usually transacts business, or a commonly-used acronym.[8]

  b.  A true name is one that does not lie about the collector's institutional affiliation and provides accurate information concerning the account, the collector's responsibility for collecting the account, and the address to which payment or disputes should be sent;[9]

  c.  A true name is a trade name registered in any state if its use is not intended to or has the effect of misleading or deceiving consumers;[10]

  d.  A true name is a trade name registered in the state in which the collector is located;[11]

---

[8] FTC Commentary at 50107.

[9] *Sheriff*, 136 S. Ct. at 1602.

[10] *Mahan*, 777 F. Supp. 2d at 1301

e. **A true name is a trade name under which the collector is licensed to provide collection services in other jurisdictions where the jurisdiction at issue does not have a licensing requirement;[12]**

f. **A true name is a trade name properly registered in any of 1) the debt collection company's place of incorporation, 2) the debt collection company's principal place of business, or 3) the state in which the plaintiff was injured;[13]**

**and**

g. **A true name in Connecticut is a name under which the collector is licensed to provide collection services in the state of Connecticut.[14]**

**Defendant's use of *ERC* does not violate *any* of these standards because:**

1. **Defendant has registered *ERC* in Florida, where it maintains its principal place of business, as a trade name;**

2. **Defendant is licensed to provide collection services by Florida regulators under the trade name *ERC*;**

3. **Defendant is licensed to provide collection services by Connecticut regulators under the trade name *ERC*;**

4. **Defendant has registered ERC in Delaware, the state in which it is incorporated;**

5. **Defendant has obtained a federal registration of its service mark *ERC* for *exclusive* use in providing debt collection services by the United States Patent and Trademark Office;**

6. ***ERC* is an acronym for Defendant's full legal name;**

**and**

7. **Defendant regularly transacts business under the name *ERC*.**

---

[11] *Velez*, 2017 WL 1476144, at *5-6. *See also Hsu v. Enhanced Recovery Co., LLC*, No. 1:17-cv-128-RP, 2018 WL 315758, *4-6 (W.D. Tex. Jan. 5, 2018) (providing trade name registered in state of collector's address in letter is a true name).

[12] *Cruz*, 2017 WL 5195225, at *6-7.

[13] *Boyko*, 2012 WL 2132930, at *3.

[14] *Kizer*, 1990 WL 317475, at *6.

14

Accordingly, the use of *ERC* in the Letter did not violate the Act because it was not a false statement of ERC's true name. As a result, this Court should enter summary judgment in favor of ERC.

C. <u>Even if it were not Defendant's true name, no violation can be based on the use of *ERC* in the Letter because any alleged misrepresentation would be immaterial.</u>

Moreover, the use of *ERC* in the Letter does not violate the Act because any alleged misrepresentation of the identity of the sender, or alleged confusion resulting therefrom, would not be material. To violate section 1692e of the Act, or its subdivisions, the conduct complained of must be material, that is, it must have the ability to influence the consumer's decision-making. *See Gabriele*, 503 Fed. Appx. at 94*; Part II.A, *supra*. The materiality standard advances the aims of the Act, which is to "provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective . . . nor undermines it . . . ." *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 759 (7th Cir. 2009). As applied in this Circuit, a representation is material if it affects the ability of the consumer to respond to a collector's communication, or dispute the account at issue. *Vallecastro*, 2015 WL 6478412, at *6.

Here, even if the use of *ERC* were not expressly permitted, which it is, it would still not violate the Act because it does not affect the consumer's ability to respond to the communication or dispute the account. ERC's address for sending payments on the account or disputing the validity or accuracy of the account is included in the Letter as well as several other pieces of information allowing Ms. Cobb to contact ERC.

15

Furthermore, Ms. Cobb did, in fact, respond to the Letter and contact ERC directly by telephone following receipt of the Letter. Davis Decl. at ¶¶ 17-18. During this phone call, Ms. Cobb requested further information concerning the subject account; however, she did not question the use of *ERC* to refer to Defendant. *Id.* ¶¶ at 19-21. Ms. Cobb requested information concerning the account balance and informed ERC's collection representative that she was "about to file bankruptcy" and asked ERC to mark the account with the fact that she would be filing bankruptcy. *Id.* at ¶ 21.[15] As a result of this telephone call, ERC marked the account as having received notice of an imminent bankruptcy, restricted the account from further activity, and ceased all collection efforts on the account. *Id.* at ¶ 22.[16] Thus, although Ms. Cobb did not actually dispute the validity or amount of the account, she received the benefit of doing so provided under the Act, cessation of all collection activity, and was able to accomplish this with the information contained in the Letter. *See* 15 U.S.C.A. § 1692g(b) (2017). Accordingly, any alleged technical misrepresentation could not have been material and, thus, would not have violated the Act. *See also Wall v. Works & Lentz of Tulsa, Inc.*, No. 17-cv-0318-CVE-JFJ, 2017 WL 4684738, at * 4-5 (N.D. Okla. Oct. 18, 2017) (dismissing with prejudice as immaterial 1692e(14) claim based on purported technical violation of analogous trade name statute where letter used name *Works & Lentz, Inc.* rather than *Works & Lentz of Tulsa, Inc.*).

---

[15] Ms. Cobb did not ultimately file for bankruptcy after this phone call. Pl.'s Resp. to Def.' Req. for Admis. No. 18.

[16] Moreover, Ms. Cobb premises her claim on the fact that ERC was not registered as a trade name for Defendant with her town clerk. The immateriality of this claim is further demonstrated by the fact that Ms. Cobb did not consult the town clerk index to confirm Defendant's corporate name. Pl.'s Resp. to Def.'s Interr. No. 11.

16

The use of *ERC* in the Letter is entirely consistent with the Act. The case law discussed herein, as well as the clear guidance from the FTC demonstrates Defendant was permitted to use *ERC* to refer to itself in attempting collection from Ms. Cobb. Not only is *ERC* an acronym for Enhanced Recovery Company, but it is a registered/licensed trade name in many states—including Connecticut—and a federally registered service mark for Defendant. Moreover, the use of *ERC* is not misleading as to the identity of the sender, nor does it falsely imply another entity is engaging in collection, i.e., it does not cause the harm the Act actually seeks to prevent. Moreover, *ERC* has already been determined to be a true name for Defendant, as a matter of law.

### III.    *ERC* has, in fact, been held to be a true name for Defendant.

On January 5, 2018, *ERC* was determined to be Defendant's true name by a District Court sitting in the Western District of Texas. *Hsu v. Enhanced Recovery Company, LLC*, No. 1:17-cv-128-RP, 2018 WL 315758, *4-6 (W.D. Tex. Jan. 5, 2018). In *Hsu*, the plaintiff alleged ERC violated section 1692e(14) of the Act, as well as a Texas state law provision similar to that of Connecticut's, through the use of *ERC* in a letter similar to the one Ms. Cobb received. *Id.* at *1.

Although the court noted that *ERC* was not registered as a trade name for Defendant in the state through filing an assumed name certificate with the Secretary of State, it found that this was not sufficient to violate either the state or federal laws. The court held that a collector does not violate the true name provision of the Act "when it uses a trade name or fictitious name that is registered with the state that appears in the debt collector's address in its

17

correspondence to the debtor." *Id.* at *4. In reaching this holding, the *Hsu* court cited much of the authority discussed in Part II, above—including the longstanding *Kizer* opinion issued from this District. *Id.* at *3 (*quoting Kizer*, 1990 WL 317475, at *6). It reasoned that *ERC* is a true name for Defendant because the letters at issue directed Ms. Hsu to contact ERC at a Florida P.O. Box and ERC had registered its initials as a fictitious name with the Florida Secretary of State before it sent its letters to the plaintiff in 2016. *Id.* at *4.

In reaching its holding, the *Hsu* court rejected the plaintiff's argument that *ERC* cannot be a true name for Defendant in Texas because it was not the subject of an assumed name certificate in Texas. In rejecting this argument, the court found that even if the state statute requiring certain entities to file an assumed name certificate applied to out-of-state debt collectors the failure to do so would not violate the Act, or the similar provision of Texas's debt collection act. *Id.* In reaching this holding, the *Hsu* court followed the unanimous direction of the Circuit Courts of Appeal that have addressed the issue. *Id. See also* Part IV.B, *infra*. It reasoned that section 1692e(14) is "simply an elaboration on the [Act's] prohibition against deceptive acts," and that the failure to register a trade name with the state does not render a debt collector's communications with a debtor false, deceptive, or misleading." *Id*. It further reasoned:

> In fact, assuming *arguendo* that ERC violated the [Texas assumed name law], this case presents an example of a state-law violation that would not constitute a FDCPA violation. Here, Plaintiff received two letters from a company attempting to collect a debt originating with T–Mobile USA. Those letters identify ERC as a debt collection company; provide a toll-free phone number at which to contact ERC; provide a link to a payment website (www.payerc.com), at which ERC lists a Jacksonville, Florida street address; and list two mailing

18

addresses located in Jacksonville. Even an unsophisticated consumer armed with this information is equipped to verify that "ERC" is a fictitious name associated with Enhanced Recovery Company, LLC. ERC's Florida registration ensures that its use of its initials is not false, deceptive, or misleading notwithstanding a violation of the [Texas assumed name law].

*Id.* at *5 (internal citations omitted).

The court rejected a second argument that a consumer could be confused upon receiving the letter based on the fact that an assumed name certificate had been filed on behalf of a second entity, ERC Environmental & Construction Services, Inc., and that there was an entity with the corporate name ERC, Inc. incorporated in Texas. *Id.* The court found that the claimed confusion would only result from "an unconvincing sequence of assumptions" culminating with the consumer's failure to remedy purported confusion by doing *any* of the following:

(1) searching the Florida Secretary of State's website, (2) calling the toll-free number on the collection letters, (3) mailing a letter to the P.O. box address requesting clarification of ERC's identity, (4) visiting www.payerc.com, or (5) conducting an internet search of debt collection companies named "ERC" located in Florida.

*Id.* The court rejected this, finding that even the "unsophisticated consumer is capable of taking simple, commonsense actions that would lead him or her to discover that the acronym used in a debt collector's correspondence is a registered fictitious name in the state in which the entity lists its address." *Id.*

Like Ms. Hsu, Ms. Cobb appears to base her claim on the fact that *ERC* is not registered as an assumed name in the specific locale where she received a letter. Unlike Ms. Hsu, however, at the time that Ms. Cobb received her letter from Defendant, *ERC* was, in fact, registered as a trade name under which Defendant provides collection services with the state authority that is responsible for

19

licensing collectors and that provides a publicly available website to verify such licenses. Moreover, unlike Ms. Hsu, Ms. Cobb actually called ERC—presumably using the toll-free number included in the Letter—as a result of receiving the subject letter, thus successfully responding to the Letter. During this call, she received information concerning the subject account and communicated her intention to declare bankruptcy. As a result of this telephone call, ERC ceased all further collection activity on the account and ended its attempts to contact Ms. Cobb.[17]

Accordingly, this matter presents even less support for the claim that *ERC* is not Defendant's true name than in *Hsu*. As such, this court should join the *Hsu* court in holding that *ERC* is Defendant's true name and entering judgment in favor of Defendant, as a matter of law.

IV.   <u>Even if ERC were required to register with town clerks, its failure to do so would not violate the Act.</u>

In her complaint, Ms. Cobb suggests that ERC has violated Connecticut state law because it has not filed an assumed name certificate in each town in Connecticut where a consumer might be found. ERC, however, is not required to file these certificates under state law. And, even if it were required to file such certificates, which it is not, a violation of that statutory provision would not, standing alone, violate the Act; rather Ms. Cobb would have to show ERC violated the Act's substantive provisions, which, as discussed above, she cannot do.

---

[17] Additionally, unlike Ms. Hsu, there is no evidence that any other entity has registered *ERC* as an assumed name in the more specific geographic area in which Ms. Cobb lives.

20

**A. ERC was not required to file an assumed name certificate under Connecticut law.**

Ms. Cobb asserts in the complaint that ERC is a debt collector as defined by the Act and her claims depend on that assertion being accurate. Connecticut law explicitly omits debt collection from activities that constitute doing business in the state. Accordingly, ERC was not required to file an assumed name certificate.

Section 35-1 states:

> No person, except as provided in this subsection, _shall conduct or transact business in this state_, under any assumed name, or under any designation, name or style, corporate or otherwise, other than the real name or names of the person or persons conducting or transacting such business, unless there has been filed, in the office of the town clerk in the town in which such business is or is to be conducted or transacted, a certificate stating . . . its full name and principal post-office address. Such certificate shall be executed . . . by an authorized officer thereof, and acknowledged before an authority qualified to administer oaths.

Conn. Gen. Stat. § 35-1 (emphasis supplied).

Although the assumed name provision does not define "conduct[ing] or transact[ing] business," it is defined elsewhere in a Connecticut statute applicable to business registrations. Section 34-275d, titled "Activities not constituting transacting business in this state," specifies twelve activities that do not constitute transacting business in the state for the purposes of determining whether a limited liability company organized under the laws of another state must register to do business in Connecticut. Among those enumerated activities are:

- "[s]ecuring or collecting debts[,]" and
- "[t]ransacting business in interstate commerce."

21

Conn. Gen. Stat. § 34-275d(a)(9), (12).[18]

The Connecticut Consumer Collection Agency Act (CCAA), which is specifically applicable to entities providing collection services in the state of Connecticut, further confirms that "collecting debts" is not "transacting business" within the state. The CCAA states "[n]o person shall act within this state as a consumer collection agency" without obtaining a license to do so. Conn. Gen. Stat. § 36a-801(a). It further provides a list of activities that constitute "acting within this state" for a collector, including, having its place of business outside of the state but regularly collecting from consumers who reside within the state. *Id.* at (a)(3). The legislature's choice to use the term "acting within the state" in the context of collection is consistent with its express exclusion of debt collection from activities constituting "transacting business" in the state.

It is undisputed that ERC engaged in communication to Ms. Cobb in an attempt to collect on an account which had been placed with ERC for collection. Furthermore, it is undisputed that collecting such due amounts is encompassed within interstate commerce as a matter of law. *See* 15 U.S.C. § 1692(d). Accordingly, debt collection in Connecticut is not "conducting or transacting business" under state law, and collectors seeking to enforce obligations are not

---

[18] This provision clarifies that it "does not apply in determining the contacts or activities that may subject a foreign limited liability company to service of process, taxation or regulation under law of this state other than sections 34-243-34-283d, inclusive." *Id.* at (c). It would make little sense, however, that a foreign company engaged in interstate debt collection—without any physical presence in Connecticut—need not file a single registration with the Secretary of State but instead must file a certificate with each of the 169 town clerks in Connecticut.

22

subject to general trade name registration requirements applicable to entities engaged in non-excluded activities located in Connecticut.

As noted above, registration of collectors in Connecticut is governed by the CCAA. The CCAA requires collectors wishing to act within the state to register with the Connecticut Banking Department. It specifically requires collectors to register the names, including trade names, that the collector provides collection services under, and prohibits the collector from using a name not registered with the state. Conn. Gen. Stat. § 36a-801(a), (i).  The CCAA, along with several other statutes applicable to other entities regulated by the Department, is the subject of House Bill 5490 pending this legislative session. This bill makes explicit what is considered the current law concerning the use of trade names by regulated entities, they may not "use[ ] a name other than their legal name *or a fictitious name approved by the [Connecticut Banking Department] commissioner and specified on [its] license.*" Office of Legislative Research, sHB 5490 Bill Analysis (Apr. 9, 2018), *available at* https://www.cga.ct.gov/2018HB-05490-R01-BA.htm (noting that the current state of law permits licensees to use fictitious names included on license).[19]

---

[19] Substitute House Bill 5490 was passed by both houses of the legislature and is pending as Public Act 18-173. *See* Connecticut General Assembly, Bill Status, Substitute for Raised H.B. No.5490, https://www.cga.ct.gov/asp/cgabillstatus/cgabillstatus.asp?selBillType=Bill&bill_num=HB-5490 (last accessed June 1, 2018). In doing so, the legislature seemingly rejected testimony that using trade names approved by the Connecticut Banking Department is inconsistent with the Act. *See* Joanne Faulkner, Re: HB 5490 (Mar. 9, 2018) *available at* https://www.cga.ct.gov/2018/BAdata/Tmy/2018HB-05490-R000315-Faulkner,%20Joanne,%20Attorney-TMY.PDF.

It is undisputed that, at the time Ms. Cobb received the Letter, *ERC* was duly registered as a trade name under which Defendant provides collection services in Connecticut. *See* Costa Cert. at 1, Exh. A. Using the "Verify a License" function on the Connecticut Banking Department's website, http://www.ct.gov/dob/site/default.asp, and searching for *ERC* brings up the license and information maintained by the Banking Department concerning Defendant and its license to provide collection services in Connecticut. *See* Landoll Decl. at ¶¶ 6-7, Exh. A; Davis Decl. at ¶¶ 8-9, Exh. D. As noted above, its license expressly states that it provides services under the trade name *ERC.*

Additionally, any activities undertaken by ERC in Connecticut are undertaken in Interstate Commerce. ERC does not have any physical presence in the state of Connecticut. Davis Decl. at ¶¶ 11-12. ERC does not employ any persons in the state of Connecticut; it does not own or lease any real property in the state of Connecticut and, consequently, it does not accept payment on debts at any physical location in Connecticut. *Id.* at ¶ 11. ERC's only activity in the state of Connecticut has been to send letters to persons located in the state of Connecticut and make telephone calls to those persons. *Id.* at ¶ 12.

ERC's "presence" in Connecticut is akin to that of a business operating an e-commerce website or catalog, that invites persons in Connecticut to place orders with it and accepts payments by phone or online. The Supreme Court's longstanding jurisprudence shows that the trade name statute should not be applied to such entities. In 1962, in deciding that Interstate Commerce would be

24

unduly burdened if states could impose sales taxes on entities without a physical presence in the state, the Court reasoned:

> For if Illinois can impose such burdens, so can every other State, and so, indeed, can every municipality, every school district, and every other political subdivision throughout the Nation with power to impose sales and use taxes. The many variations in rates of tax, in allowable exemptions, and in administrative and record-keeping requirements could entangle [an] interstate business in a virtual welter of complicated obligations.

*Nat. Bellas Hess, Inc. v. Illinois*, 386 U.S. 753, 759-60 (1967). This concern would be especially present if Connecticut, which contained approximately one percent of the U.S. population as of 2010, required entities engaged in Interstate Commerce to have an officer execute a sworn certificate in each of its 169 towns. *See also Quill Corp. v. North Dakota*, 504 U.S. 298, 318-19 (1992) (reaffirming *Bellas Hess*). Connecticut's statutory scheme does not impose such an absurd requirement and this Court should not interpret it as doing so. *See Gomez v. United States*, 490 U.S. 858, 864 (1989) (affirming policy to avoid interpretations of statutes that raise constitutional issues if a reasonable alternative interpretation poses no such issues).

Finally, the conclusion that an entity without a physical presence in Connecticut, who engages in activities that are excluded from transacting business in Connecticut, need not file trade name certificates with Connecticut's 169 town clerks is further compelled by guidance issued by Connecticut municipal servants, including town clerks themselves. While many of the town clerks do not provide any information to guide potential registrants regarding trade name certificates, others do. For example, the Fairfield town clerk's website

25

instructs that "[o]nly businesses *located within the Town of Fairfield* should file a trade name with the Fairfield Town Clerk."[20] Likewise, the Mansfield town clerk's website implies the same, stating "[p]rior to filing [the certificate] persons must speak with the planning and zoning office and health office to assure ability to conduct such business in said location."[21] Likewise, information provided by the Connecticut Department of Revenue states that a business need only file a trade name certificate where it is physically located, instructing "if you are adding or changing a trade name for your business, you should register that trade name at the *town hall in which the business is located*."[22] This guidance further buttresses the conclusion that the trade name statute only requires businesses with a physical location within a town to file a trade name certificate with the town clerk; not businesses that merely have contact with persons within the town.

Moreover, other town clerk guidance further demonstrates that a foreign limited liability company, who is not "transacting business" under section 34-275d, need not file a trade name certificate. The Stamford town clerk instructs "[i]f your business is a corporation or LLC, *you must file with the Connecticut*

---

[20] **Trade Name Certificates, Fairfield Connecticut, http://www.fairfieldct.org/content/10726/12573/12576.aspx (last accessed June 1, 2018) (emphasis supplied).**

[21] **Trade Name Certificates, Mansfield Connecticut, http://www.mansfieldct.gov/content/1914/1916/2407.aspx (last accessed June 2, 2018). This webpage also instructs that "[p]ersons establishing such a business must contact Department of Revenue Services for Tax ID and information" and that all persons operating a limited liability company in the town "must file with the Connecticut Secretary of the State." *Id.***

[22] **Managing Registration Information, Department of Revenue Services, http://www.ct.gov/drs/cwp/view.asp?a=1454&q=506772 (last accessed May 29, 2018) (emphasis supplied).**

26

*Secretary of State, prior to filing your DBA name in Stamford*."[23] **As discussed above, section 34-275d expressly states that foreign entities engaged in debt collection or Interstate Commerce in Connecticut are not required to file as a foreign limited liability company with the Secretary of State. This restriction, the guidance from the town clerks of Mansfield and Fairfield, and the Department of Revenue Services' direction, further demonstrate that entities engaged in Interstate Commerce or debt collection are not conducting or transacting business under the trade name statute.**

**Accordingly, ERC was not required to file an assumed name certificate under the assumed name statute to seek to obtain payment on overdue obligations from Ms. Cobb or other Connecticut-based consumers.**

**B. <u>Even if ERC had been required to file an assumed name certificate, the failure to do so would not violate the Act.</u>**

**Ms. Cobb suggests ERC violated the Act by failing to file a number of assumed name certificates under Connecticut law. Even if ERC had been required to file such certificates, which as discussed above, it was not, violation of this state law would not constitute a *per se* violation of the Act. Rather, Ms. Cobb would have to show that ERC's failure to abide by the state law separately violated a substantive provision of the Act. And, as discussed in Parts II and III, *supra*, it would not.**

**Ms. Cobb's complaint appears to rest on the erroneous assumption that a violation of state law also violates the Act. This assumption is not supported by**

---

[23] **Trade Name Information, Welcome to Stamford, https://www.stamfordct.gov/town-clerk/pages/trade-name-application (last accessed June 2, 2018) (emphasis supplied).**

federal case law. Circuit Courts of Appeals addressing this issue have unanimously held that the violation of a state law is *not* a *per se* violation of the Act.

Five Circuit Courts of Appeals have considered whether the violation of a state law is a *per se* violation of the Act. The first federal appeals court to address the question was the Ninth Circuit. *See Wade v. Regional Cred. Ass'n*, 87 F.3d 1098 (9th Cir. 1996). In *Wade*, a consumer brought an action against a debt collector alleging it violated the Act by attempting to collect a debt in the state of Idaho, without having a permit as required by state law. *Id.* at 1099. The consumer alleged that this violated, *inter alia*, section 1692 of the Act. *Id.* at 1100. The court recognized the claims under the Act were based entirely on the alleged violations of state law, and held the violation of a state law is not a *per se* violation of the Act. *Id.* Additionally, it held the collector's actions were innocuous and, therefore, did not violate the substantive provisions of the Act. Specifically, it held that all information given to the consumer was accurate, without false representations, and the collection efforts were not unfair or "unconscionable in either a legal or lay sense." *Id.* To the extent the consumer was deprived of an opportunity to have the collector's activities reviewed by the state department responsible for licensing collectors, the court held that the consumer's remedy lay in Idaho state law, not in the Act. *Id.* at 1100-01.

Similarly, the Eighth Circuit held the violation of a state law does not automatically violate the Act. *Carlson v. First Revenue Assurance*, 359 F.3d 1015 (8th Cir. 2004). In *Carlson*, the consumer sued a collector for an alleged violation

28

of a Minnesota law requiring a state license for each location from which it collected debts. He argued that this, in turn, violated the Act. *Id.* at 1017. The Eighth Circuit concluded such violation did not *per se* violate the Act. It reasoned the Act "was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of state debt collection law into a federal violation." *Id.* at 1018. It further reasoned that only collection activities that are substantive violations of the Act can support liability under the Act. *Id.*

The Seventh Circuit, echoing the Ninth and Eighth Circuits before it, held the Act could not be used to enforce other federal or state laws. *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007). In *Beler*, the consumer alleged that a collector violated Illinois state law, as well as the Social Security Act, by issuing a citation to the consumer's bank which caused the bank to freeze the consumer's assets, including exempt social security benefits. The Seventh Circuit held that the Act could not be used to enforce these laws, reasoning: "[i]f [the collector] violated the Social Security Act, the statute's rules should be applied. Likewise, if the [collector] violated Illinois law. [The Act] does not take a state-law dispute and move it to federal court, even though the amount in controversy is well under $75,000 and the parties are not of diverse citizenship." *Id.* at 747.

The Sixth and Eleventh Circuit Courts of Appeals have each addressed this issue and, although each ultimately found a violation of the Act, they did so only after reaffirming their sister Circuits' holdings that a violation of state law does

29

not constitute a *per se* violation of the Act. *See Currier v. First Resolution Invest. Corp.*, 762 F.3d 529, 536 (6th Cir. 2014); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1198 (11th Cir. 2010). In *Currier*, the court held that the conduct at issue, maintaining an invalid lien was not just a technical violation of Kentucky state law, but also violated a specific provision of the Act. *Currier*, 762 F.3d at 535. In *LeBlanc*, the Eleventh Circuit held that the collector's failure to register as a collector in the state, a pre-requisite to bringing a lawsuit on the debt, would make a threat to bring suit contained in a consumer letter a misrepresentation as the unlicensed collector would be prohibited from maintaining suit on the account. *LeBlanc*, 601 F.3d at 1192, 1201. The Eleventh Circuit explicitly reasoned, "we do not hold that all debt collector actions in violation of state law constitute *per se* violations of the [Act]. Rather the conduct at issue must also violate the relevant provision of the [Act]." *Id.* at 1193.

These holdings were informed by a decision issuing from this District. *See Wade*, 87 F.3d at 1100 (*citing Lindbergh v. Transworld Systems, Inc.*, 846 F. Supp. 175, 180 n.28 (D. Conn. 1994)). In *Lindbergh*, the plaintiff argued that the collector had violated the Act because although the collector was licensed under the CCAA, it mailed a letter to the consumer from a California business address, which was not included on the license, in purported violation of the CCAA. *Lindbergh*, 846 F. Supp. at 180. The court rejected this argument as "reflect[ing] a false, narrow, and overly mechanical reading of the [Act.]" *Id.* at 181. The court reasoned:

> Assuming *arguendo* that the [collector] has violated [the CCAA], the
> plaintiff has nevertheless failed to set forth a viable claim under the

30

> [Act.] Any remedy he may have therefore lies with the state Banking Commissioner, not with this court.

*Id.*[24]

The Second Circuit Court of Appeals has not had an opportunity to join its sister Circuits in the above holding. Notwithstanding the lack of Second Circuit guidance on this issue, this Court should follow the unanimous direction of the five Circuit Courts of Appeal that have addressed the subject, and similarly hold that there is no *per se* liability under the Act for an alleged violation of a state or local law. Thus, even if ERC violated the assumed name law by not filing assumed name certificates which, as discussed above, it did not, the remedy for such violation would not be a claim under the Act, but rather any express remedies provided by Connecticut law.

The result sought by Ms. Cobb, that violation of state or local law, even those unrelated to debt collection, by a collector constitutes a violation of the Act, would lead to absurd results. First, as noted by the *Beler* court, it would provide statutory standing for a plaintiff to bring an action in federal court without any regard as to jurisdictional limitation. Second, it would completely abrogate the American rule and provide for attorneys' fees for claims asserting <u>any</u> technical violation, even where, as here, the law at issue does not provide attorneys' fees for a successful plaintiff, or even create a private right of action. Third, as many states and cities create their own agencies to investigate and enforce rules that have no private right of action, the creation of a federal right of

---

[24] The court further noted that the CCAA does not provide a private right of action and can only be enforced by the Connecticut Banking Department. *Id.* at 181 n.28.

action usurps the power of the local legislatures, diminishes the concepts of state sovereignty and federalism, and would impose a federal statutory scheme on state and local laws never intended to confer rights under the Act.  Fourth, it would provide a plaintiff an opportunity to seek statutory damages and attorneys' fees in federal court without any showing of having suffered a concrete or particularized injury-in-fact, a result inconsistent with Article III of the Constitution.[25]

## V.    Conclusion

This matter presents a clear question of law without any dispute of fact. Ms. Cobb received a letter from Defendant that used the name *ERC* and provided several methods by which Ms. Cobb could contact Defendant. As a result, Ms. Cobb successfully called ERC, obtained additional information concerning the account at issue, and stopped collection activity on the account. Thus, it cannot be said that the use of *ERC* impeded Ms. Cobb's ability to respond to the letter or dispute the account.

Moreover, *ERC* is a name under which Defendant is licensed to provide collection services in several jurisdictions, including Ms. Cobb's home state of Connecticut and ERC's home state of Florida. And Defendant is the only entity that is permitted under federal law to use the name *ERC* in providing debt collection services throughout the entirety of the United States. Accordingly, *ERC*

---

[25] *See Strubel v. Comenity Bank*, 842 F.3d 181, 190-95 (2d Cir. 2016) (dismissing two claims for alleged technical violations of federal Truth in Lending Act for lack of jurisdiction where such violations did not cause the plaintiff any injury) (*citing Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016)).

is Defendant's true name and its use could not confuse or mislead Ms. Cobb to think that a different entity was attempting to collect on the account from her.

Consequently, ERC respectfully requests that this Court find that it is entitled to judgment as a matter of law and enter summary judgment in its favor.

DATED: <u>June 14, 2018</u>.

<div style="margin-left:40%">

SMITH, GAMBRELL & RUSSELL, LLP

<u>/s/ Scott S. Gallagher</u>
**Scott S. Gallagher, Esq**
**PHV Bar Number: phv08629**
**50 North Laura Street, Suite 2600**
**Jacksonville, Florida 32202**
**Phone: (904) 598-6111**
**Fax: (904) 598-6211**
**Email: sgallagher@sgrlaw.com**
*Admitted Pro Hac Vice*

and

**Michael P. Regan**
**1301 Avenue of the Americas, 21st Floor**
**New York, New York 10019**
**Tel. (212) 907-9720**
**mregan@sgrlaw.com**
*Attorneys for Defendant*

</div>

<div style="text-align:center">

<u>CERTIFICATE OF SERVICE</u>

</div>

I hereby certify that on June 14, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

**Joanne S. Faulkner, Esq.**
**123 Avon Street**
**New Haven, CT 06511-2422**
**Email: faulknerlawoffice@snet.com**
*Attorney for Plaintiff*

<div style="margin-left:40%">

<u>/s/ Scott S. Gallagher</u>
**Attorney**

</div>

33