## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DEBORA COBB

v.                                          CASE NO.  3:17CV 1629 (VLB)

ENHANCED RECOVERY COMPANY, LLC

### PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

The parties agree that the Fair Debt Collection Practices Act ("FDCPA") prohibits a collector from using "any" name other than its true name when collecting an overdue consumer account. 15 U.S.C. § 1692e(14) provides that "the following conduct is a violation of this section:  . . . (14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." The issue before the Court is whether the Defendant's use of the cryptic and unrecognizable letters "ERC," instead of the Defendant's true name, complies with the FDCPA.

The Defendant claims, but has not met its factual burden to prove, that "ERC" is an acceptable "true name" because it is purportedly a commonly-used acronym that the least sophisticated consumer would naturally recognize as a legitimate debt collector, not a scam to be avoided. The Defendant also claims that the least sophisticated Connecticut consumer should have conducted a search in Florida, Minnesota, and the U.S. Patent Office to ascertain that ERC is a fictitious name for Enhanced Recovery Company, LLC, notwithstanding that Enhanced intentionally hid that relationship or affiliation, and that in any event federal jurisprudence teaches that an FDCPA debtor cannot be expected to

undertake any such outside research to apprise herself of information that Congress has mandated be directly disclosed to her.

Contrary to the Defendant's contention, "ERC" is no more familiar or recognizable than any other series of three random letters, whether tested by the established "least sophisticated consumer" standard or any other measure. The Defendant's use of "ERC" to identify itself to the vulnerable consumers from whom it collects debts evokes the recent admonition articulated by the Supreme Court:. "A debt collector may not lie about his institutional affiliation." Sheriff v. Gillie, 578 U.S. ——, ——, 136 S. Ct. 1594, 1602 (2016) (quotation marks and citation omitted).

As the Plaintiff will show, the Defendant has not met its legal or factual burden to show that "ERC" is a true name, a commonly-used acronym, a Connecticut registered "fictitious name," or a trade name permitted by the Connecticut Banking Department. More important, use of "ERC" does not comply with § 1692e(14) under any measure, and certainly not under this Circuit's least sophisticated consumer standard. Since the Defendant's untenable positions are not supported by admissible facts or by its legal arguments, its motion for summary judgment must be denied.

## The Court Has Jurisdiction

The Plaintiff first discusses whether the Court has FDCPA jurisdiction, since that is a predicate issue not addressed by the Defendant, no doubt because there is no dispute between the parties on this issue.

The Defendant's motion implicitly, and correctly, presumes that the FDCPA gives this Court jurisdiction to decide the "fictitious name" issue. For the FDCPA to apply, (1) the plaintiff must be a "consumer" who allegedly owes a debt or a person who has been the object of efforts to collect a consumer "debt"; and (2) the defendant collecting the debt must be a "debt collector" as that term is defined by the FDCPA. *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 225 (D. Conn. 2014); 15 U.S.C. § 1692a(3), (5), (6).

(1) The plaintiff is a consumer who had used a Target credit card. Amended Complaint ¶ 9 [Dkt. No. 10 at 5]; Answer ¶ 9 [Dkt. No. 11 at 2]; Planning Report [Dkt. No. 17 at 2 ¶ 2]. The Plaintiff's sworn response to the defendant's interrogatories stated that she used the Target card "for clothing, food, personal care items and children's school supplies." [Dkt. No. 32-3 at 12 ¶1.]  Accordingly, the uncontroverted evidence establishes that plaintiff's alleged debt is a "consumer" obligation.

(2) The Defendant is a covered debt collector because it regularly uses the means of interstate commerce to collect others' debts. Amended Complaint ¶ 6 [Dkt. No. 10]; Answer ¶ 6 [Dkt. No. 11]. It is licensed as a consumer debt collector by the Connecticut Banking Department and is a long-standing member of the collector's trade association. Amended Complaint ¶ 7 [Dkt. No. 10]; Answer ¶ 7 [Dkt. No. 11]. Its letter at issue here provides the notices "required by" 15 U.S.C. § 1692g and § 1692e(11) ("This is an attempt to collect a debt. Any information obtained will be used for that purpose"). The letter claims it is a "COLLECTION

3

NOTICE" and was sent for "collection efforts." It refers to the "consumer rights" set forth on the reverse. Amended Complaint ¶ 9 [Dkt. No. 10 at 5].

In their Planning Report [Dkt. No. 17], the parties further stipulated: the Defendant regularly attempts to collect debts allegedly owed to another, which it obtains and accomplishes by use of the means of interstate commerce, such as telephone, mail, or over the Internet; the Defendant has been authorized to do business in Connecticut since August 2010 under the name Enhanced Recovery Company, LLC.; the Defendant has been licensed as a consumer collection agency in Connecticut since September 4, 2001. Its present license number is CCA-953724.

The Defendant's status as a "debt collector" is also established as a matter of law.

## I. The FTC Staff interpretation Does not Support Defendant's Use of "ERC"

The Defendant cannot, and does not, rely on the statutory language, which prohibits a collector from using "any" name other than its true name when collecting an overdue consumer account. To justify its use of a fictitious name, the Defendant first relies on *FTC Statements of General Policy or Interpretation, Staff Commentary on the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50097-02, 50108-02 (Dec. 13, 1988). That document superimposed an exemption on the statutory language to allow a collector to use not only its full business name, but also "the name under which it usually transacts business, or a commonly-used acronym." The Defendant has the burden of proof to show that the FTC's exemption to the FDCPA's "true name" requirement applies. See *Evankavitch v.*

*Green Tree Servicing, LLC,* 793 F.3d 355, 367 (3d Cir. 2015) ("absent compelling reasons to the contrary, a party seeking shelter in an exception to a statute has the burden of proving it."). The Defendant has no factual support for the proposition that "ERC" is either the name under which the Defendant usually transacts business or a commonly-used acronym.

**First,** "ERC" is not the name under which Enhanced usually conducts business. Defendant uses its full name, not its initials, in its banking relations as well as its relations with taxing authorities and on contracts.  Dkt. No. 11 at 4 ¶ 18. It is also qualified to do business in Connecticut under its full name [Dkt. No. 17 at 2 ¶ 5] and is licensed by the Connecticut Banking Department under its full name. Dkt. No. 11 at 2 ¶7. Thus, the Defendant's usage of "ERC" is not within the exemption for "the name under which it usually transacts business."

**Second,** the Defendant's cryptic initialism is not a commonly-used acronym. The obscure initialism "ERC" does not fit within the exemption granted by the FTC Staff interpretation, because it is not a "commonly-used acronym."  Is ERC some kind of official body, like the Energy Regulatory Commission? The letter C is commonly used for commission, as in FTC, or SEC; or it might stand for council, committee, center, or corporation.  One web site says "ERC" stands for Evangelical Reformed Church or Eastern Red Cedar.[1]  Another site lists eighty-seven possible meanings, none of them beginning with Enhanced.[2] In the stock market, "ERC" is the symbol for the Wells Fargo Multi-Sector Income Fund

---

[1] **https://onelook.com/?w=expand:erc&posfilter=pn**
 **https://onelook.com/?w=expand:erc&posfilter=cn&ssbp=1**

[2] **https://acronyms.thefreedictionary.com/erc**

Common Stock.

"ERC" is simply not a household acronym, such as IRS, or any other "commonly–used acronym" within the limited exception recited in the FTC Staff interpretation. Moreover, Enhanced has a physical presence in only three out of fifty states and claims to be licensed in only ten out of fifty states.  Dkt. No. 32-1 at 27.  Enhanced has five branches licensed with the Connecticut Banking Department, out of 967 licensed collection branches overall. [3]  ERC is just too obscure to be a "commonly-used acronym." Simply because its territory is so limited, Enhanced itself is not widely known among consumers or the general public, in contrast to a company that uses the initialism GE or IBM, for instance.

Indeed, in *Johnson v. I.C. Sys., Inc.*, No. 4:15CV01574 AGF, 2016 WL 304545, at *2 (E.D. Mo. Jan. 25, 2016), the court rejected a similar argument "that because Plaintiff is one of the largest debt collection agencies in the United States, its name would be recognizable as a debt collector; and that a google search of 'I.C. System, Inc.,' shows that it is a debt collector."  Unlike the defendant in *Johnson*, Enhanced is not even one of the country's largest debt collectors. Regardless, "ERC" is not a household name and is even less recognizable.

In *Blarek v. Encore Receivable Mgmt., Inc.*, No. 06-C-0420, 2007 WL 984096 (E.D. Wis. Mar. 27, 2007), the court noted that, "although I conclude that the use of a commonly used acronym might not be a facial violation of either § 1692e or  § 1692g(a)(2), I am unable to conclude that 'HSB/' is, in fact, a commonly used

6

acronym." "[T]he use of an acronym which the consumer has never encountered before could constitute a statement which is plainly confusing on its face. Despite the fact that 'HSB/' is a live registered trademark, Encore has not presented sufficient evidence demonstrating the absence of a genuine issue of material fact as to whether Blarek ever encountered 'HSB/,' and whether 'HSB/' is a commonly used acronym." *Id.* at *8.

"The least sophisticated consumer cannot be expected to make sense of acronyms." *Velez v. Healthcare Revenue Recovery Grp., LLC*, No. 1:16CV377, 2017 WL 1476144, at *12 (M.D.N.C. Apr. 24, 2017). *Velez* cited *Catencamp v. Cendant Timeshare Resort Grp.-Consumer Fin., Inc*., 471 F.3d 780 (7th Cir. 2006), for "the norm that unsophisticated readers do not see through acronyms when the creditor's full name is missing. Even when that norm does not apply-for some acronyms, such as AT&T and IBM, are so famous that even an unsophisticated consumer must appreciate the source-. . . ." *Id.* at 782. "Maybe a sophisticated person could have guessed that 'CTRG' is an acronym for 'Cendant Timeshare Resort Group'. The Act does not require, however, either sophistication or guesswork." *Id.*

Enhanced has provided no proof whatsoever that the fictitious name "ERC" is commonly used or recognized outside the confines of Enhanced's own few locations and its employees. This fictitious name successfully conceals the true name of the debt collector. One salient effect is to deter FDCPA lawsuits: "ERC" is a fictitious name, not an entity, and cannot sue or be sued.  *America's*

---

[3] The Court may take judicial notice of the Banking Department website.

*Wholesale Lender v. Pagano*, 87 Conn. App. 474, 477, 866 A.2d 698 (2005).

Without the extensive interstate investigation that is the linchpin of Enhanced's motion (discussed below), no one would know what "ERC" stands for or who "ERC" is. The letters "ERC" fail to fit within the FTC's staff exemption for a commonly-used acronym.

## II. Case Law Allowing a Registered Trade Name To Be a True Name Is Inapposite or Unpersuasive

Several cases cited by the Defendant conclude that a registered trade name may satisfy the "true name" mandate of the FTC.  For Connecticut authority, the Defendant cites a case in which Judge Daly found that "there is a factual issue left to be resolved, namely, whether the defendant is licensed to do business in Connecticut as American Credit and Collection." *Kizer v. Am. Credit & Collection*, No. CIV. B-90-78 (TFGD), 1990 WL 317475, at *7 (D. Conn. Dec. 17, 1990). That factual issue remained even though "[t]he defendant has produced a copy of a document stating that 'NATIONAL ACCOUNT SYSTEMS, INC. D/B/A AMERICAN CREDIT & COLLECTION, INC.' has been issued a license to engage in business as a consumer collection agency." *Id.*  In stark contrast, Enhanced Recovery has admitted that there is no such document. Dkt. No. 32-2 at 10; Cf. Dkt. No. 34. Moreover, *Kizer* did not involve an unknown initialism, and the company's relationship and affiliation with its d/b/a was apparent.  Judge Daly quoted a UCC Commentary that is particularly apt in a case as here measured by the least

---

http://www.ct.gov/dob/cwp/view.asp?a=2233&q=297872&dobNAV_GID=1663.

sophisticated consumer standard: "Trade names are deemed to be too uncertain and too likely not to be known to the secured party or person searching the record, to form the basis for a filing system." *Id.,* at *5.

Not surprisingly, the Defendant does not cite *Moore v. National Account Systems, Inc.*, 1991 WL 313896 (D. Conn. Nov. 13, 1991), wherein Magistrate Judge Smith granted summary judgment in favor of Moore under § 1692e(14) where the injury occurred in Connecticut and the defendant collection company had not licensed its alternate name (National Business Division, not a mysterious three letters) in Connecticut.

The Defendant's out-of-district cases are inapposite. Many out-of-state cases involve trade names that are actually registered under a state "fictitious name" statute, or names that so resemble the actual name that they are not deceptive as to the source of the letter. *E.g., Mahan v. Retrieval-Masters Credit Bureau, Inc.*, 777 F. Supp. 2d 1293, 1300 n. 7 (S.D. Ala. 2011) (state law fictitious name registration). The same cannot be said of ERC/Enhanced Recovery Company. It admittedly has no Connecticut "fictitious name" registration.

The Defendant quotes general statements from cases without mentioning their actual results. *E.g., Boyko v. Am. Int'l Grp., Inc.*, No. CIV. 08-2214 RBK/JS, 2012 WL 2132390 (D.N.J. June 12, 2012). "Had Plaintiff paid an invalid debt to CCS without bringing the instant lawsuit, Plaintiff may not have been able to recover his payment as a result of CCS's failure to post the required bond in New Jersey." Id., at *6. Compliance with true name statutes is as crucial as is compliance bonding requirements for similar reasons.

`                                                          9

In *Velez v. Healthcare Revenue Recovery Grp., LLC*, No. 1:16CV377, 2017 WL 1476144, at *5–6 (M.D.N.C. Apr. 24, 2017), the case was dismissed at the pleading stage: "The Complaint does not plausibly allege that HRRG did not use its 'true name,' and in fact is somewhat confusing about the name of the Defendant. Plaintiff identifies Defendant as 'Healthcare Revenue Recovery Group, LLC, d/b/a ARS Account Resolution Services' in the caption of the Complaint and in the first paragraph." Id., at *5. There, the collector had properly registered with the Florida and North Carolina secretaries of state. Here, the d/b/a was not registered with the Connecticut Secretary of the State, nor was it registered with Connecticut town clerks.

Because it can cite no other case supporting the use of a recondite initialism as a true name, the Defendant relies on *Hsu v. Enhanced Recover Co., LLC,* No. 1:17-CV-128-RP, 2018 WL 315758 (W.D. Tex. Jan. 5, 2018).  The *Hsu* court had acknowledged in an earlier ruling that "[w]here debt collectors make certain representations to debtors, § 1692e(14) entitles the debtors to receive certain information, i.e., the true legal name of the collecting entity." *Hsu v. Enhanced Recover Co., LLC,* No. 1:17-CV-128-RP, 2017 WL 4310643, at *2 (W.D. Tex. July 10, 2017). It also had recognized that "the information would help a debtor evaluate whether the debt collector runs a legitimate operation or a fraudulent one." *Id.* Then, in its later dispositive ruling, the court stated that  the "unsophisticated consumer is capable of taking simple, commonsense actions that would lead him or her to discover that the acronym used in a debt collector's correspondence is a registered fictitious name in the state in which the entity lists its address." *Hsu*,

10

2018 WL 315758, at *5. Specifically, without further explanation of the capabilities of such an unsophisticated consumer, the court held that the "unsophisticated" Texas consumer was required to look to the Florida Secretary of State to find out who "ERC" really was. *Id.*

The result in *Hsu* is unpersuasive because it is at odds with the "least sophisticated consumer" standard as established by the Second Circuit, since the *Hsu* court required consumers to undertake an elaborate investigation, and indeed an investigation outside the confines of their home state. Precedent confirms that the FDCPA standard is not "the internet savvy consumer" that the *Hsu* court presumed:

First, even if an initialism can be a "true name" for a differently–named corporation, the least sophisticated Connecticut consumer is not expected to chase around in Delaware, Florida, or the U.S. Patent Office to figure out who ERC is. "The statute does not mention internet searches or other research, and Plaintiff has not identified any legal authority that supports his claim that the Court should look beyond the name on the envelope to research results linked to the name." *DeCraene v. Weber & Olcese, P.L.C.*, 300 F. Supp. 3d 978, 982 (W.D. Mich. 2018); "Plaintiff's attempt to add a research element into the unsophisticated consumer calculus is unsupported by any legal authority." *Davis v. MRS BPO, LLC*, No. 15 C 2303, 2015 WL 4326900, at *3 (N.D. Ill. July 15, 2015). "[T]his court finds it unlikely that the 'least sophisticated consumer' can be fairly expected to conduct internet searches in order to find the link between ARS and HRRG when he or she cannot be expected to make sense of acronyms." *Velez v.*

11

*Healthcare Revenue Recovery Grp., LLC,* No. 1:16CV377, 2017 WL 1476144, at

\*11–12 (M.D.N.C. Apr. 24, 2017).

The Connecticut consumer who investigated by going to the most readily

accessible source (the Connecticut Banking Department web site) would still not

know who "ERC" is because it is not listed there.  As one court recognized, such

a consumer would be more likely to conclude that "ERC" is a scam.

> Anyone conducting such a check would see that Tasman indeed is not a
> collection agency licensed with the DFI. And, Derosia argues, upon
> learning that Tasman is not a collection agency licensed with the DFI, such
> a consumer would be more likely to assume the letter is a scam and ignore
> it. Does the FDCPA not protect the slightly more sophisticated consumer
> as well as the unsophisticated?

> Most (indeed, almost all) case law discusses the FDCPA in the context of
> protecting unsophisticated consumers. And that makes sense. It would gut
> the purpose of the FDCPA if those most vulnerable to tactics which violate
> the act were left unprotected on some sort of a "they should have known
> better" basis.

*Derosia v. Credit Corp Sols., Inc.,* No. 17-CV-1671, 2018 WL 1513043, at \*4 (E.D.

Wis. Mar. 27, 2018).

<u>Second</u>, in this Circuit, the "hypothetical least sophisticated consumer

does not have 'the astuteness of a "Philadelphia lawyer" or even the

sophistication of the average, everyday, common consumer'";  the standard is

designed to protect "those consumers most susceptible to abusive debt

collection practices." *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 135 (2d

Cir. 2010) (citations omitted).  *Cf. Johnson v. Revenue Mgmt. Corp.*, 169 F.3d

1057, 1060 (7th Cir. 1999) ("Unsophisticated readers may require more

explanation than do federal judges; what seems pellucid to a judge, a legally

sophisticated reader, may be opaque to someone whose formal education ended

12

after sixth grade."). Analogously, in *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004), the court noted that "[i]t is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt." It is just as unfair to hide the true name of the collector, impairing the consumer's ability to know whether the collection letter is legitimate or from a scam artist.

The least sophisticated consumer is of course expected to read the collection letter with some care. *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir. 1993). Doing so in this case, however, does not give the consumer a clue that she needs to conduct a sophisticated interstate investigation. For instance, Enhanced claims herein that "ERC" is a service mark, but there is no visible indication of that on the letter, such as SM or the registered symbol ®. Enhanced has not filed its trademark in Connecticut, even if the least sophisticated consumer could be expected to investigate that obscure fact.  https://www. concord-sots.ct.gov/ CONCORD/ online?sn= PublicInquiry &eid =9815.

The plaintiff herself responded here under oath to discovery that "I did not know who the sender was because it concealed its true name, and was concerned that the letter might be a scam." She noted that her attorney "viewed the Connecticut Banking Department web site which did not list any collector named ERC." "I did not want to deal with a scam, with an unknown company, or with one that concealed its true name." "A consumer would be confused about who 'ERC' is and whether to pay a company that concealed its name or appeared to be a scam or illegitimate." Dkt. No. 32-3 at 15 (¶¶ 10, 11), 17 (¶ 17), 18 (¶ 18).

Indeed, a tell-tale characteristic of a scam is the use of three- or four-letter registered fictitious names. See paragraph 23 of the complaint in *Federal Trade Commission v. Asset & Capital Management Group*, Case No. 13-cv-01107-DSF-JC (C.D. Cal.): "[T]he Defendants have registered the enterprise's debt collection companies to do business under numerous fictitious names consisting of three or four letters - ACMG, WRA, SCG, ERA, LMR, AFGA, CMP, and WPG among them – creating a virtual alphabet soup of business names . . . ."[4]

To require a consumer to do exhaustive research and go beyond the borders of her State to protect herself from scams or unknown entities does not comply with the FDCPA or accomplish its purpose to protect the vulnerable least sophisticated consumer from deception.

---

[4] Historically, the FDCPA's prohibition against using a fictitious name is based on pre-FDCPA precedent and experience. *Wm. H. Wise Co. v. F.T.C.*, 246 F.2d 702, 703 (D.C. Cir. 1957) (injunction against "using fictitiously any trade or corporate name in collecting past-due account."); *Sunshine Art Studios, Inc. v. F. T. C.*, 481 F.2d 1171, 1174 (1st Cir. 1973) ("[I]t is settled that the use of what is in effect a fictitious collection agency to coerce payment is an unfair and deceptive practice").  "The mere fact that Guardian is separately incorporated *and duly licensed as a collection agency* under the laws of Massachusetts cannot, in light of the evidence of its absolute domination, justify a different result." *Id*. (Emphasis added.) See "Use of fictitious collection agency to coerce payment as unfair or deceptive practice prohibited by § 5 of Federal Trade Commission Act (15 U.S.C.A. § 45(a)(1))"  25 A.L.R. Fed. 390 (1975).

14

**III. The Defendant's Collection Letters Can Easily Disclose its True Name**

The Amended Complaint and Answer [Dkt. Nos. 10, 11, ¶¶ 13, 17-19, 22] establish the following additional facts. In July 2017, the Defendant sent its initial collection letter to the Plaintiff at her Connecticut address. A true copy (redacted) is attached to the Amended Complaint as Ex. 1. The Defendant had previously used its full name in collection letters, including on the reverse. See redacted letter dated March 2012, attached to the Amended Complaint as Ex. 2. The Defendant used the name of its legal entity, Enhanced Recovery Company, LLC in its collection letters in and before August 2014. [Dkt. No. 17 at 3 ¶ 10]. On and after December 12, 2016, the Defendant, while continuing to use "ERC", again began disclosing its true name by including the following language in its collection letters: "Our Corporate Address is: Enhanced Recovery Company, LLC, Doing Business As ERC and/or Enhanced Resource Centers, 8014 Bayberry Road, Jacksonville, Florida 32256." [Dkt. No. 11 at 4 ¶ 22.] That clarifying language was not included in the letter sent to plaintiff.  The evidence shows that Defendant could have easily have complied with its § 1692e(14) obligation, and indeed has done so. Further, this change in its own practices no doubt explains why the Defendant has not asserted a bona fide error defense. 15 U.S.C. § 1692k(c); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 36 (2d Cir. 1996).

**IV.  Enhanced Cannot Prove That ERC Is a Connecticut Licensed Trade Name**

Connecticut Banking Department law provides: "No person licensed to act within this state as a consumer collection agency shall do so under any other name or at any other place of business than that named in the license." Conn.

Gen. Stat. § 36-801(i). Nothing in the Connecticut collection agency licensing law yet allows a "fictitious" name.[5] The Department's Regulations, adopted pursuant to § 36a-809, specifically prohibit "(14) [t]he use of any business, company or organization name other than the true name of the consumer collection agency's business, company or organization." Reg. Conn. State Agencies § 36a-809-11.

The Department's web site has a readily downloadable list of licensed collection agencies.[6] The licensee list does not show an "ERC."  Enhanced's only claim that it has registered a trade name in Connecticut is based on a copy of an entry from the out-of-state Nationwide Mortgage Licensing System (NMLS) web site. [The least sophisticated consumer has to navigate an off-putting "captcha" before accessing the information, in contrast to the more readily available Banking Department site.] But that web site itself disclaims accuracy: "In the provision of this service and the data and information contained in NMLS Consumer Access[SM], SRR makes no warranties of any kind, and disclaims liability to any person for any actions taken or omitted with respect to NMLS Consumer Access[SM]. SRR is not responsible for and cannot verify information contained in NMLS Consumer Access[SM], and does not warrant or guarantee the accuracy or completeness of the information requested."[7]  Information appearing on the web site, proffered for its truth, is inadmissible hearsay. *Tremalio v.*

---

[5] The Department expressly mandates compliance with the FDCPA's standards. Conn. Gen. Stat. §  36a-812.

[6] http://www.ct.gov/dob/cwp/view.asp?a=2233&q=297872&dobNAV_GID=1663

[7]  http://www.nmlsconsumeraccess.org/Home.aspx/TermsOfUse  ¶ 9.

*Demand Shoes, LLC*, No. 3:12-CV-00357 VLB, 2013 WL 5445258, at \*6 n.7 (D. Conn. Sept. 30, 2013) ("As such the Court does not rely on information from this website in deciding this summary judgment motion.").

The Defendant claims that it is undisputed that ERC appears as a licensed trade name on Defendant's Connecticut collection agency license.  Def. Mem. Dkt # 30 at 14 n.4.[8]  But the Defendant has not shown a Connecticut license, much less one with a fictitious name thereon, and admits that it cannot show any such Connecticut license.  Rocky Landoll, the Defendant's Director of Legal, states that it "is my understanding that actual licenses are not provided any more.  Is there anything you can provide me that would show ERC as a DBA on our Connecticut license? Is there a way to send me an actual license?"  Dkt No. 32-2 at 10. The answer was no.

The Defendant has proffered no admissible evidence of a Connecticut licensed trade name, even if one were allowed.  Nor can the least sophisticated Connecticut consumer be expected to search for a fictitious name outside the confines of her own State.

**V. Connecticut  Does Not Yet Allow Defendant To Use a Fictitious Name**

The plaintiff has mentioned Connecticut's Fictitious Name statute, Conn. Gen. Stat. § 35-1, only as a possible in-state backup method for identifying "ERC," when the Banking Department's list comes up dry, as here. She does not base any claim on violation of state law. The Defendant's fictitious name discussion at Part IV of its brief, taking up one-third of its memorandum (pp. 21-

---

[8] The Plaintiff uses the ECF pagination rather than the brief's internal pagination.

17

32), is irrelevant. The Court need not be drawn into giving an advisory opinion about the future change in the Connecticut collection agency law.

Not until October 1, 2018, will Public Act No. 18-173 allow, for the first time, many businesses under the supervision of the Banking Department, including collection agencies, to use a "fictitious name." Was it mere coincidence that the new legislation uses the same "fictitious name" phrase as in the existing statute, § 35-1? No.[9]  But what the law will be in the future is not at issue in this case.

Suffice it to say that the Defendant had no Connecticut authority at the time of its letter to the Plaintiff to use a "fictitious name."

## VI. Violation of the FDCPA's Express Language Is Always Material

The Defendant's short argument about materiality is misplaced. Section 1692e(14) is mandatory, not precatory.  See Pub.L. 90–321, § 503(4) (May 29, 1968), 82 Stat. 146, 167, reported as a note following 15 U.S.C. § 1601 ("Rules of law are stated in the indicative mood.").

Section 1692e, at issue here, contains a non-exhaustive list of "false, deceptive, or misleading representations or means." Congress decided that it "is" a violation for a collector not to use its true name. 15 U.S.C. § 1692e(14). A fictitious name is, by definition, not a true name. Here, "the representation in question violates a particular subsection of that provision." *Clomon*, 988  F.2d  at 1320.

---

[9]  *In re Natalie S.*, 325 Conn. 833, 841, 160 A.3d 1056, 1062 (2017).

Compliance with §1692e(14) and similar specific FDCPA disclosure provisions is always material. *E.g., Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012) ("whether a materiality requirement attaches to other violations of §1692e has no impact on [plaintiff's] allegations that the defendants violated §1692e(11)."); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) (Congress decided that the failure to make the [§ 1692g] disclosure is a failure the Act is meant to penalize. . . . Since § 1692g(a)(2) clearly requires the disclosure, we decline to offer debt collectors a free pass to violate that provision on the theory that the disclosure Congress required is not important enough. There is also no need for individual inquiry about the materiality to any given recipient."); *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008) ("The Fair Debt Collection Practices Act (FDCPA) prohibits a debt collector, when reporting information to a credit bureau, from "omit[ting] a piece of information that is always material, namely, that the consumer has disputed a particular debt."). Plus, correct identification of the debt collector and the owner of the debt is "material" to prevent confusing or misleading the consumer. *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).

The Plaintiff did not know who or what "ERC" was, or whether it was a scam artist that she should not pay, or why it concealed its name. The least sophisticated consumer, reading the Defendant's collection letter as it then existed, should well have been suspicious, as well as perplexed.

19

The Defendant could cite only one case supporting its short materiality argument. *Wall v. Works & Lentz of Tulsa, Inc.*, No. 17-CV-0318-CVE-JFJ, 2017 WL 4684738, at *5 (N.D. Okla. Oct. 18, 2017) ("defendant's use of a nearly identical business alias is simply not the type of deceptive or misleading conduct that § 1692e(14) prohibits.") That case in fact proves the materiality element here since the name used there was "nearly identical" and did not conceal the collector's identity. Here, there was no name, but merely undecipherable and obscure initials, not at all similar to the Defendant's real name of Enhanced Recovery Company, LLC. Enhanced actively and intentionally concealed its affiliation and relationship with ERC. The *Wall* opinion only serves to show how an obscure reference to "ERC" is materially misleading.

The Defendant's claim that the use of obscure initials is not material contravenes the purpose of the FDCPA in requiring true names, and is based on the discredited "she should have known better" theory. *Derosia,* 2018 WL 1513043, at *4.

## CONCLUSION

The Defendant has not met its legal or factual burden to show that "ERC" is a true name, a commonly-used acronym, a Connecticut registered "fictitious name," or a trade name permitted by the Connecticut Banking Department. More important, use of the obscure acronym "ERC" does not comply with § 1692e(14) under any measure, and certainly not under the least sophisticated consumer standard.

Because using "ERC" does not meet the least sophisticated consumer standard in this Circuit, summary judgment should enter for the Plaintiff. *New England Health Care Employees Union v. Mt. Sinai Hosp.*, 65 F.3d 1024, 1029 (2d Cir. 1995) (summary judgment may enter for nonmoving party); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991) (same).

THE PLAINTIFF

By:_____/s/ Joanne S. Faulkner_____          Date: July 5, 2018
Joanne S. Faulkner ct 04137
123 Avon Street
New Haven, CT 06511
(203) 772-0395

Certificate of Service

I hereby certify that on July 5, 2018 a copy of within was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

            ____/s/ Joanne S. Faulkner___
            JOANNE S. FAULKNER ct04137