**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DEBORA COBB,                          )
                                      )
            Plaintiff,                )
                                      )
                                      )   CASE NO: 3:17-cv-01629-VLB
v.                                    )
                                      )
ENHANCED RECOVERY COMPANY,            )
LLC,                                  )
                                      )
            Defendant.                )
                                      )

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SANCTIONS**

**SMITH, GAMBRELL & RUSSELL, LLP**

*/s/ Scott S. Gallagher*
**Scott S. Gallagher, Esq**
**PHV Bar Number: phv08629**
**50 North Laura Street, Suite 2600**
**Jacksonville, Florida 32202**
**Phone: (904) 598-6111**
**Fax: (904) 598-6211**
**Email: sgallagher@sgrlaw.com**
*Admitted Pro Hac Vice*

**and**

**Michael P. Regan**
**1301 Avenue of the Americas, 21st Floor**
**New York, New York 10019**
**Tel. (212) 907-9720**
**mregan@sgrlaw.com**

*Attorneys for Defendant*

# TABLE OF CONTENTS

I.    Introduction.............................................................................................1

II.   The Court is empowered to award ERC its attorneys' fees for
      defending actions initiated in bad faith and without legal or factual
      support .................................................................................................2

III.  The claims and the procedural history in this matter demonstrate
      the improper purpose of Ms. Cobb and her counsel in litigating
      this action...........................................................................................4

      A.  Ms. Cobb and her counsel knew from the beginning of this
          matter that there was no factual or legal basis for the claims.....6

      B.  The continued prosecution of this matter has been in bad
          faith and an apparent attempt to extract a settlement
          payment from ERC................................................................9

IV.   This Court should sanction Ms. Cobb's counsel because she
      unreasonably multiplied the proceedings in this matter .......................13

      A.  Ms. Cobb filed the amended complaint and asserted a claim
          under the Act for violation of state law, and she later
          disclaimed doing so .........................................................14

      B.  Ms. Cobb refused to concede that the Connecticut
          Department of Banking has licensed Defendant to use the
          trade name *ERC* while acting as a consumer collection
          agency ...............................................................................16

V.    ERC has a clear right to recover its attorneys' fees incurred to
      have the NMLS records admitted and to prove ERC's licensing
      status ................................................................................................19

VI.   Conclusion.........................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Bureau of Collection Recovery, LLC*, No. 10-cv-12818, 2011 WL 32044759 (E.D. Mich. July 28, 2011) ................................................................ 5

*Bieder v. Retrieval Masters Creditors Bureau, Inc.*, 146 F. Supp. 3d 465 (E.D.N.Y. 2015) ................................................................................................ 7

*Boyko v. Am. Int'l Grp., Inc.*, No. 8-cv-2214 (RBK/JS), 2009 WL 5194431 (D.N.J. Dec. 23, 2009) ...................................................................................... 7

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ............................................... 3

*Forto v. Capital One Bank, N.A.*, No. 14-cv-05611, 2017 WL 4168529 (N.D. Cal. Sept. 20, 2017) ........................................................................................... 13

*Hsu v. Enhanced Recovery Co., LLC*, No 1:17-cv-128-RP, 2018 WL 315758 (W.D. Tex. Jan. 5, 2018) ............................................................................... 8, 9

*Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42 (2d Cir. 2018) ......................... 2, 4

*In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109 (2d Cir. 2000) .................................. 4

*Islam v. Credit Control, LLC*, No. 16-cv-6883 (E.D.N.Y. June 27, 2017) ................... 22

*Jacobs v. Ocwen Loan Servicing, LLC*, No. 13-cv-02518-REB-BNB, 2015 WL 1433233 (D. Colo. Mar. 26, 2015) .................................................................. 5

*Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018) ...................................................... 4

*Kizer v. Am. Credit & Collection*, No. B-90-78 (TFGD), 1990 WL 317475 (D. Conn. Dec. 17, 1990) ..................................................................... *passim*

*Marx v. Gen. Rev. Corp.*, 133 S. Ct. 1166 (2013) ............................................ 4

*Moorer v. Nat'l Account Sys., Inc.*, No. 3:91-cv-35, 1991 WL 313896 (D. Conn. Nov. 13, 1991) ..................................................................... 7, 9, 20

*Rhinehart v. CBE Grp., Inc.*, 714 F. Supp. 2d 1183 (M.D. Fla. 2010) ......................... 5

*Sohi v. Diversified Adjustment Serv., Inc.*, No. 1:15-cv-563, 2016 WL 2745298 (S.D. Ohio May 10, 2016) .............................................................................. 5

*United States v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338 (2d Cir. 1991) ........................................... 4

*Velez v. Healthcare Revenue Recovery Grp., LLC*, No. 1:16-cv-377, 2017 WL 1476144 (M.D.N.C. Apr. 24, 2017) ...................................................................... 7, 21

*Virginia Properties, LLC v. T-Mobile Ne. LLC*, 865 F.3d 110 (2d Cir. 2017) .............. 2

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110 (2d Cir. 2009) ........... 3

**Statutes**

§ 36a-24(b), Conn. Gen. Stat. ............................................................................... 16

15 U.S.C. § 1692, *et seq*. ................................................................................*passim*

28 U.S.C. § 1927 ................................................................................... 3, 4, 13, 19

**Rules**

Fed. R. Civ. P. 11(b) ............................................................................................. 3

Fed. R. Civ. P. 36(a)(1) .................................................................................. 19, 22

Fed. R. Civ. P. 37(c)(2) .................................................................................. 19, 22

Fed.R.Civ.P. 56(c)(4) ......................................................................................... 18

Local Rule 56(a)(2)(i) ......................................................................................... 18

Local Rule 56(a)(3) ............................................................................................ 18

**Other Authorities**

Connecticut Department of Banking, <u>Consumer Collection Agencies Licensed in Connecticut</u>, https://portal.ct.gov/DOB/Consumer-Credit-Licenses/Consumer-Credit-Licenses/Consumer-Collection-Agencies-Licensed-in-Connecticut (last visited March 24, 2019) ........................................................ 16

Statements of General Policy or Interpretation, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50107 (Dec. 13, 1988) ................ 7, 9

## I.    Introduction

On July 21, 2017, Enhanced Recovery Company, LLC sent a letter to Ms. Cobb, in which it referred to itself by the initials of its corporate name, *ERC*. This letter informed Ms. Cobb that her Target-brand credit card account had been placed with ERC for collection and provided Ms. Cobb with multiple methods for contacting ERC including calling its toll free telephone number. On August 1, 2017, Ms. Cobb called ERC, requested information about the account, and informed ERC's representative that she would be filing for bankruptcy. As a result of this phone call, ERC stopped all collection activity on the account. Less than two months later, Ms. Cobb sued ERC, alleging that its letter violated the Fair Debt Collection Practices Act (the "Act") because, she alleged, *ERC* is not a true name, even though the Connecticut Department of Banking licensed Defendant to act as a consumer collection agency in Connecticut under the name *ERC*.

Although ERC provided Ms. Cobb with the facts necessary to show that ERC was so licensed and, consequentially, Ms. Cobb had no claim under relevant law, she and her counsel continued to pursue this action, and repeatedly demanded settlement payments from ERC. Her refusal to accept ERC's licensing status appears to be an attempt to use a change in Department record-keeping (moving to an all-electronic system of record) to assert a meritless claim against ERC in the hopes that it would find litigating its licensure to be too burdensome and would instead pay Ms. Cobb to dismiss her claims.

In defending this matter—including proving facts to which Ms. Cobb refused to admit—ERC has incurred over $41,000 in costs and fees. *See* Second

Declaration of S. Gallagher dated March 25, 2019 [hereinafter 2d Gallagher Decl.] at ¶9. ERC seeks to recover all such amounts as this matter was unreasonably filed and prosecuted against ERC in bad faith and for the purpose of harassing ERC into settling rather than defending this matter.

## II.    The Court is empowered to award ERC its attorneys' fees for defending actions initiated in bad faith and without legal or factual support.

ERC should recover its attorneys' fees and costs incurred in defending this action because the action was ill-founded from the start. ERC clearly communicated to Ms. Cobb's counsel, before it even filed its answer in this matter, the information on which this Court based its order granting summary judgment for ERC. Ms. Cobb's counsel, however, refused to meaningfully engage with ERC or its counsel about the merits of the case and, instead, continuously attempted to extract a settlement payment from ERC. This course of conduct is prohibited by at least three authorities.

An award of sanctions is reviewed for an abuse of discretion. *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018); *Virginia Properties, LLC v. T-Mobile Ne. LLC*, 865 F.3d 110, 113 (2d Cir. 2017). If a court sanctions a litigant for bad faith and outlines its factual findings with a high degree of specificity, then its order will not be set aside unless the court misapplies the law, clearly assesses the evidence erroneously, or decides the motion unreasonably. *Huebner*, 897 F.3d at 53. The Second Circuit recognizes that the trial court is in the best position to apply the fact-dependent legal standard that informs the decision as to whether sanctions are appropriate. *Id.* (*citing Virginia Properties*, 865 F.3d at 113).

2

Rule 11 states the proponent of a pleading filed with the court certifies he or she has inquired into the basis for the filing and it is not being presented for an improper purpose, its legal contentions are warranted, and its factual contentions have evidentiary support. Fed. R. Civ. P. 11(b). If this certification is false, the court may sanction the filer and his or her firm. *Id.*

Additionally, if the court finds an action is filed in bad faith, the court may award sanctions without relying on Rule 11. The court has the inherent power to award attorneys' fees to litigants to sanction adversaries who act in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). The court may impose sanctions under its inherent authority "if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). "Conduct is entirely without color when it lacks any legal or factual basis[.]" *Id. See also Chambers*, 501 U.S. at 46 (holding that such sanctions "vindicat[e] judicial authority without resort to the more drastic sanctions available for contempt of court").

A court may sanction an attorney under 28 U.S.C. § 1927. Section 1927 provides a mechanism to require an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "This section 'imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics,' and provides courts with a cudgel to use, in their discretion, 'to deter unnecessary delays in litigation.' "

3

*Huebner*, 897 F.3d at 55 (*quoting United States v. Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991)). A court can impose sanctions under section 1927 when it finds the claims are without color and were brought in bad faith or motivated by improper purpose. *Id.* (*citing Kimm v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018)). An inference of bad faith is warranted when a party undertakes "frivolous actions that are 'completely without merit.' " *Id.* (*quoting In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000)).

The Act itself also provides a mechanism to deter frivolous litigation. Section 1692k(a)(3) of the Act permits a court to sanction a litigant for bringing suit under the Act "in bad faith and for the purpose of harassment." 15 U.S.C. §1692k(a)(3). The Supreme Court recognized this provision codifies the court's inherent powers, but does not limit or disturb them. *Marx v. Gen. Rev. Corp.*, 133 S. Ct. 1166, 1175-76 (2013). The Second Circuit recently affirmed an award of sanctions against a litigant premised on sections 1692k(a)(3) and 1927 as well as the court's inherent authority. *See Huebner*, 897 F.3d at 56-57.

III. <u>The claims and the procedural history in this matter demonstrate the improper purpose of Ms. Cobb and her counsel in litigating this action.</u>

The Act contains an asymmetrical fee-shifting provision. The Act entitles plaintiffs' attorneys to recover their reasonable fees and costs in any action in which they are successful in imposing liability under the Act. But the Act only permits defendants to recover their attorneys' fees upon a showing that an action was brought in bad faith and for the purposes of harassment. 15 U.S.C. §

4

1692k(a)(3). This is one of those situations in which an award of defense fees are appropriate under the Act.

Bad faith and harassment is shown where simple legal research shows that claims are without merit and that continuing to pursue a claim that would cause needless expenditures for the defendant. *Adams v. Bureau of Collection Recovery, LLC*, No. 10-cv-12818, 2011 WL 32044759, at *2 (E.D. Mich. July 28, 2011) (awarding fees to defendant for legally unsupported claims). Likewise, fees are appropriate when a reasonable investigation would reveal that factual allegations in a complaint, or available evidence, do not support a claim under the Act. *Jacobs v. Ocwen Loan Servicing, LLC*, No. 13-cv-02518-REB-BNB, 2015 WL 1433233, at *3 (D. Colo. Mar. 26, 2015); *Rhinehart v. CBE Grp., Inc.*, 714 F. Supp. 2d 1183, 1186 (M.D. Fla. 2010). Continuing to pursue a claim to extract a settlement payment evidences an intent to harass a collector. *See Sohi v. Diversified Adjustment Serv., Inc.*, No. 1:15-cv-563, 2016 WL 2745298, at *10-12 (S.D. Ohio May 10, 2016) (Report & Recommendation).[1]

Ms. Cobb filed her complaint against ERC in September 2017, alleging that ERC's letter dated July 21, 2017 violated the Act because it used *ERC* rather than Enhanced Recovery Company, LLC to refer to Defendant. *See* Compl. (DE 1). On November 7, 2017, ERC's internal personnel sent Ms. Cobb's counsel information from the National Multistate Licensing System (NMLS)—the system of record for the Connecticut Department of Banking—demonstrating that *ERC* is a registered

---

[1] The parties stipulated to dismiss the action before the district judge ruled on the plaintiff's objections to the report and recommendation.

trade name under which Defendant is licensed to act as a consumer collection agency in Connecticut. *See* Second Declaration of Richard Landoll [hereinafter 2d Landoll Decl.], dated April 8, 2019, at ¶ 6, Exh. A. ERC answered the complaint on November 28, 2017, reasserting the fact that it is licensed to perform collection services in Connecticut under *ERC*. Despite twice receiving this information from Defendant, Ms. Cobb filed an amended complaint the next day, reasserting the same claims.  The facts demonstrate that there was no basis for the filing of the complaint in the first place and, although Ms. Cobb was provided multiple notices that her claims were ill-founded, she continued to prosecute this action in an attempt to extract a settlement payment from ERC.

A. <u>Ms. Cobb and her counsel knew from the beginning of this matter that there was no factual or legal basis for the claims.</u>

While Ms. Cobb has claimed in this matter that ERC is permitted only to use its full corporate name in its letters to consumers, this is inconsistent with well-established authority. In 1990, Ms. Cobb's counsel herself argued that the use of any trade name, even if it is registered, violates the Act. *See Kizer v. Am. Credit & Collection*, No. B-90-78 (TFGD), 1990 WL 317475, at *5 (D. Conn. Dec. 17, 1990). The *Kizer* court rejected this argument, instead holding that whatever name is included on a collector's consumer collection agency license in Connecticut is a true name under the Act. *Id.* at *6. In so holding, the *Kizer* court noted that this was consistent with the FTC's guidance on the Act, issued in 1988, in which the FTC permitted the use of a collector's full business name, the name under which it usually transacts business, or a commonly used acronym. *Id.* (*citing* FTC, Statements of General Policy or Interpretation, Staff Commentary on the Fair Debt Collection Practices

6

*Act*, 53 Fed. Reg. 50097, 50107 (Dec. 13, 1988) [hereinafter FTC Guidance). *See also Moorer v. Nat'l Account Sys., Inc.*, No. 3:91-cv-35, 1991 WL 313896 (D. Conn. Nov. 13, 1991) (reaffirming *Kizer* standard).

While neither the *Kizer* decision nor the FTC Commentary is binding on this Court, they are consistent with the intervening case law decided under section 1692e(14) of the Act, on which Ms. Cobb based her claim against ERC. *See, e.g.*, *Velez v. Healthcare Revenue Recovery Grp., LLC*, No. 1:16-cv-377, 2017 WL 1476144 (M.D.N.C. Apr. 24, 2017) (holding that tradename registered in collector's home state was a true name under the Act); *Bieder v. Retrieval Masters Creditors Bureau, Inc.*, 146 F. Supp. 3d 465 (E.D.N.Y. 2015) (holding name under which collector was licensed in New York City to be true name under the Act); *Boyko v. Am. Int'l Grp., Inc.*, No. 8-cv-2214 (RBK/JS), 2009 WL 5194431, at *7 (D.N.J. Dec. 23, 2009) (holding that true name includes corporate name and name under which collector is licensed to do business). As a result, this Court concluded that "[c]ase law is clear on this point – if an entity is licensed to do business under a trade name, that name is the entity's 'true name' for the purpose of the [Act]." Order (DE 42) at 7.

As noted in the Court's order granting summary judgment, Ms. Cobb was unable to cite to a single case in which a court recognized a claim under section 1692e(14) of the Act for the use of a trade name that the collector has registered in the applicable jurisdiction. *Id.* at 9. Instead, Ms. Cobb relied on easily distinguished case law in an attempt to undermine the long-established precedent on this point.

At the time Ms. Cobb filed her initial complaint, it was clear that no claim would lie if the Connecticut Department of Banking licensed Defendant to act as a consumer collection agency under the name *ERC*. Despite this clear guidance, there is no indication Ms. Cobb, or her counsel, made any effort to investigate whether Defendant was so registered before filing the initial complaint, as such an investigation would have disclosed that Defendant was licensed to use the trade name *ERC*. Moreover, Ms. Cobb filed the amended complaint *after* Defendant had provided Ms. Cobb with evidence that it is licensed in Connecticut to act as a consumer collection agency under the trade name *ERC*.

In addition, on January 10, 2018, Defendant provided Ms. Cobb a copy of the Court's decision in *Hsu v. Enhanced Recovery Company*. 2d Gallagher Decl. at ¶ 18.[2] In *Hsu*, the plaintiff proffered a similar argument as Ms. Cobb here: Defendant could not use *ERC* in its letters in Texas because it had not complied with a Texas-state law unrelated to debt collection, about businesses filing certificates of fictitious names with the counties in which they operate. *Hsu v. Enhanced Recovery Co., LLC*, No 1:17-cv-128-RP, 2018 WL 315758, at *4-5 (W.D. Tex. Jan. 5, 2018). The *Hsu* court rejected this theory, finding that if *ERC* was registered as a fictitious name in the state to which the letter was sent or to which it directed the consumer to send a response, then it is a true name under the Act, notwithstanding that Defendant may not have complied with the unrelated state law. *Id.* at *4-5.

---

[2] In the email transmitting the opinion, ERC also included a link to ERC's Connecticut licensing records on NMLS. 2d Gallagher Decl. at ¶ 18.

Although the *Hsu* court adopted a standard that embraces this District's *Kizer* and *Moorer* holdings—and rejected the very argument that Ms. Cobb asserted in the amended complaint—Ms. Cobb neither dismissed her amended complaint, nor indicated that she would not pursue the argument that violation of section 35-1 violated the Act.[3] ERC, both directly and through counsel, provided Ms. Cobb with all of the information necessary to show that there was no legal or factual support for her claims and that it was, in fact, licensed by the Connecticut Banking Department to use *ERC* as a trade name when acting as a consumer collection agency in the state. This information was equally available to Ms. Cobb and her counsel before she filed the lawsuit (and Ms. Cobb's counsel was intimately familiar with the *Kizer* standard considering her involvement in that matter), and there is no excuse for Ms. Cobb's decision to continue this action after Defendant ensured that she had the information by providing it to her directly. Thus, the continued prosecution can only be viewed as bad faith and harassment.

**B. <u>The continued prosecution of this matter has been in bad faith and an apparent attempt to extract a settlement payment from ERC.</u>**

On November 7, 2017, ERC provided Ms. Cobb, through her counsel, a copy of ERC's NMLS records, which she could have accessed herself, and which foreclose Ms. Cobb's claims against ERC under *Kizer*, the FTC Commentary, and other consistent case law. In this email, ERC asked Ms. Cobb to dismiss the claims. In response, Ms. Cobb's counsel asserted that the registration was irrelevant under the Act, a position that the *Kizer* court rejected when Ms. Cobb's counsel made that

---

[3] *See* Discussion Part IV.B, *infra.*

9

same argument nearly 27 years prior. Following these communications, Ms. Cobb took several actions to cause ERC to have to undergo additional expense to defend this action all the while making incessant settlement demands to ERC. This history demonstrates that Ms. Cobb's intent in bringing this ill-founded action was to harass ERC into paying to settle her claims rather than spend the money to litigate them.

On November 29, Ms. Cobb filed an amended complaint in this matter after noting to counsel for ERC that this is a "fee-shifting case." 2d Gallagher Decl. at ¶ 13.  On the eve of ERC's response deadline, Ms. Cobb's counsel communicated that she would accept $5,000 to resolve her claims and that ERC "has changed its letters to be compliant, so let's get rid of this before year end[.]" 2d Gallagher Decl. at ¶ 16. Despite having clear defenses to liability, and communicating such to Ms. Cobb, Defendant offered a nominal settlement to resolve this matter to avoid further court intervention. Ms. Cobb rejected ERC's settlement offer.

After the Court ordered the parties to attend an in-person settlement conference in Hartford, Ms. Cobb again attempted to leverage a settlement payment from ERC. On January 31, 2018, Ms. Cobb's counsel communicated:

> The conference order mandates that whoever comes from Enhanced have full authority to settle up to plaintiff's last demand. Maybe we could settle without the expense of travel for you and your client, which will probably exceed our current demand………which can only increase.

2d Gallagher Decl. at ¶ 19, (ellipsis in original). ERC and its lead counsel in this matter, Scott Gallagher, are both located in Jacksonville, Florida. In addition Ms. Cobb improperly noticed a deposition of the person that would be attending the

10

settlement conference on behalf of ERC to occur in Connecticut on the day following the settlement conference. On February 21, Ms. Faulkner again demanded $5,000 and informed ERC's counsel that the demand would increase upon having to draft a settlement memorandum and attend the conference. 2d Gallagher Decl. at ¶ 20. On the day before the settlement conference, Ms. Cobb again stated:

> Please read page 2 of the settlement conference order. You are supposed to be there WITH AUTHORITY to pay the $5k Let's do it now.

2d Gallagher Decl. at ¶ 23.

On the day following the settlement conference, Ms. Cobb continued to harass ERC with correspondence seeking to settle the case. Additionally, in her March 8 email, Ms. Cobb threatened to amend her complaint to add a claim for an oral misrepresentation made on Ms. Cobb's telephone call with ERC. This purported misrepresentation, however, was a response by ERC's representative after Ms. Cobb knowingly misrepresented the previous balance on the account and then asked how the amount could have increased to the amount ERC sought.

On April 6, 2018, ERC provided the certification of Carmine Costa, director of the Consumer Credit Division of the Connecticut Department of Banking. This certification and its exhibits, relied on by the Court to determine when *ERC* was registered as trade name with the Department, confirmed that *ERC* became a licensed tradename for Defendant in August 2015, twenty-three months before the letter at issue. In response, Ms. Cobb's counsel stated that she does not understand "why [ERC] continues to fight this when it has long since changed its

11

mailing" and made another settlement demand of $5,000. 2d Gallagher Decl. at ¶ 27.

ERC filed a motion for summary judgment on June 12, 2018. Following this filing, Ms. Cobb's counsel emailed counsel for ERC, informed that Ms. Cobb would challenge the NMLS records and again demanded a settlement from ERC. On July 5, Ms. Cobb filed her opposition to ERC's motion for summary judgment, in which she made several meritless arguments as to the legal standards to be employed and the admissibility of ERC's evidence in support of its motion, all of which this Court rejected. That same day, Ms. Cobb again demanded a settlement payment from ERC. Even after the motion for summary judgment was fully briefed, Ms. Cobb's counsel continued to demand that ERC settle the case and even noted that this was a fee-shifting matter in responding to ERC's motion for judicial notice. *See* Pl.'s Opp. to Mot. for Jud. Notice (DE 38) at 5.

Ms. Cobb demanded $5,000 to settle her claim no fewer than five times. Additionally, Ms. Cobb offered an alternative settlement demand of $1,000, the full amount of statutory damages that she could be awarded under the Act, plus attorneys' fees and costs—i.e., Ms. Cobb's best day in court. She made this demand on no fewer than six occasions.  These repeated demands for the same amounts despite ERC's continued refusals reflect that Ms. Cobb was seeking only to recover a settlement payment from ERC notwithstanding the invalidity of her claims and her lack of any alleged harm caused by ERC's letter.

12

**IV.     This Court should sanction Ms. Cobb's counsel because she unreasonably multiplied the proceedings in this matter.**

As noted above, Ms. Cobb and her counsel have continued to prosecute this matter without any colorable legal basis since its very outset. While some of these actions could be seen as what would be necessary to prosecute a claim, however ill-founded, to a resolution, other actions Ms. Cobb's counsel took can only be seen as unreasonably multiplying these proceedings, in violation of 28 U.S.C. § 1927.

Where counsel refuses to concede claims that lack any color of law, counsel unreasonably and vexatiously multiplies the proceedings and the Court may properly award attorneys' fees as a sanction. *Forto v. Capital One Bank, N.A.*, No. 14-cv-05611, 2017 WL 4168529, at *6-8 (N.D. Cal. Sept. 20, 2017). The *Forto* court awarded attorneys' fees to the defendant where the plaintiff's counsel continued to litigate the claims despite being notified of the defects in the claim and made meritless objections to briefing and the defendant's evidence. *Id.* at *7. The court reasoned:

> the record shows that for nearly three years, Plaintiff's counsel's conduct has forced URS to waste time and resources defending an action that, from the beginning, lacked a factual basis. That Plaintiff's counsel nevertheless continued to prosecute Plaintiff's claims, despite being presented with evidence that her claims were meritless, shows that counsel unreasonably and vexatiously multiplied these proceedings and did so in bad faith. Taken as a whole, the undersigned finds Plaintiff's counsel's conduct in this case amounts to harassment.

*Id.* The *Forto* court awarded a total of $57,457 to the defendants as a sanction for the unreasonable conduct. *Id.*

On November 7, 2017, ERC provided Ms. Cobb's counsel with a copy of the NMLS records demonstrating that *ERC* is a registered trade name under which

13

Defendant is licensed to act as a consumer collection agency in Connecticut. These records, standing alone, suffice to meet the *Kizer* standard discussed above, and demonstrate that Ms. Cobb's claims under the Act fail. Instead of dismissing her claims, however, Ms. Cobb took several actions following receiving these records that served only to multiply these proceedings.

### A. Ms. Cobb filed the amended complaint and asserted a claim under the Act for violation of state law, and she later disclaimed doing so.

On November 28, Ms. Cobb filed an amended complaint that offered no other factual allegations in support of her claim that ERC's July 2017 letter violated the Act. Instead, the amended complaint offered additional legal conclusions, allegations about how ERC has previously referred to itself, and a legal theory based on purported violation of Connecticut General Statute § 35-1. In addition to causing ERC to have to incur the costs of responding to the amended pleading, this amendment also enlarged the scope of discovery, and, as noted in Ms. Cobb's opposition to ERC's motion for summary judgment, caused ERC to devote one-third of its summary judgment brief to addressing that ERC did not violate the fictitious name statute and why, even if it had, that would not establish a claim under the Act.

Perhaps recognizing that the state law claim was ill-founded, Ms. Cobb later disclaimed that she ever intended to base a violation on this statute stating:

> The plaintiff has mentioned Connecticut's Fictitious Name statute, Conn. Gen. Stat. § 35-1, only as a possible in-state backup method for identifying "ERC," when the Banking Department's list comes up dry, as here. She does not base any claim on violation of state law.

14

Pl.'s Opp. to Summ. J. (DE 35) at 17. This disclaimer, however, is opposed to Ms. Cobb's position communicated throughout this matter.

When provided with the NMLS records in November 2017, Ms. Cobb's counsel responded that companies in Connecticut have to "jump through several hoops" to use a trade name. 2d Landoll Decl. at ¶ 6, Exh. A.  Additionally, Ms. Cobb's discovery requests sought to have ERC admit that it had not filed a fictitious name certificate with any town clerk, and Ms. Cobb sought to have ERC stipulate to this as a "material fact" in the parties' planning meeting report. 2d Gallagher Decl.*.* at ¶ 14.  Additionally, in her responses to ERC's requests for admissions, Ms. Cobb asserted that it was irrelevant whether Defendant was licensed in Florida to use *ERC* as a trade name in collecting consumer debts, because "defendant has admitted that it has not filed a fictitious name registration with any Connecticut town clerk." *See* Pl.'s Resp. to Req.'s for Admiss. No. 27 (DE 32-3 at Exh. A).

If Ms. Cobb truly did not intend to base a claim against ERC on a purported violation of section 35-1, she never communicated that to ERC, nor did she take any action that would indicate that position. Accordingly, ERC could only presume that it would need to adequately address that claim in its motion for summary judgment and expended one-third of its initial summary judgment brief in addressing this claim.

15

**B. Ms. Cobb refused to concede that the Connecticut Department of Banking has licensed Defendant to use the trade name *ERC* while acting as a consumer collection agency.**

Throughout this proceeding, Ms. Cobb has refused to accept the NMLS records demonstrating that *ERC* is a licensed trade name for Defendant in Connecticut. Ms. Cobb has stood on such refusal despite the fact that:

1. The Connecticut Department of Banking website transfers consumers to the NMLS website to confirm the licenses of consumer collection agencies;[4]

2. Connecticut state law provides that NMLS can be used as the system of record, if so designated, by the Department of Banking;[5] and

3. Connecticut Department of Banking staff have confirmed that NMLS is the system of record and that the Department no longer issues paper licenses to collection agencies.[6]

In fact, Ms. Cobb has attempted to use the fact that the Banking Department has moved to the all-electronic NMLS system of record to gain a tactical advantage in this matter. In her opposition to ERC's motion for summary judgment, Ms. Cobb cited to communications from the Banking Department stating that it does not "issue or print paper licenses anymore" and that the licensing status is reflected on the NMLS records, as an admission that ERC is not licensed. Pl.'s Opp. to Mot. Summ. J. (DE 35) at 8 (*citing* Dkt. No. 32-2 at 10).

---

[4] Davis Decl. (DE 32-1) at ¶¶ 24-25; Connecticut Department of Banking, Consumer Collection Agencies Licensed in Connecticut, https://portal.ct.gov/DOB/Consumer-Credit-Licenses/Consumer-Credit-Licenses/Consumer-Collection-Agencies-Licensed-in-Connecticut (last visited March 24, 2019) ("To verify that a consumer collection agency is licensed to do business in Connecticut, please use the NMLS Consumer Access link below. NMLS Consumer Access is a fully searchable website that allows the public to view information concerning state-licensed consumer collection agencies.").

[5] Conn. Gen. Stat. § 36a-24(b).
[6] Costa Cert. (DE 32-4) at 1, Exh. A; Landoll Decl. at Exh. B.

As a result of these refusals, ERC has had to take several actions to prove its licensure to Ms. Cobb's and the Court's satisfaction. These efforts include:

1. Coordinating with the Department of Banking on numerous occasions to obtain records beyond the publicly available records on the consumer-facing NMLS site;[7]

2. Moving for judicial notice of the NMLS records;[8] and

3. Filing a reply brief in support of its motion for judicial notice.[9]

In addition to failing to accept the NMLS records demonstrating that Defendant has been licensed to use *ERC* as a trade name in Connecticut since 2015, Ms. Cobb also asserted frivolous objections to the admissibility of declarations from ERC's officers and employees, and the Banking Department's officers, concerning Defendant's licensing in Connecticut. In her opposition to ERC's motion for summary judgment, Ms. Cobb objected to the Court considering the declarations executed by Jason Davis, ERC's Senior Vice President of Compliance, Richard Landoll, ERC's Legal and License Officer at the time of the licensing amendment, and Carmine Costa, Director of the Consumer Credit Division of the Banking Department as "hearsay." Despite asserting these objections, Ms. Cobb offered no evidence whatsoever to show that these declarations were not made on personal knowledge, nor any evidence that the persons executing these declarations were

---

[7] *See* Landoll Decl. (DE 32-2) at ¶¶ 10-14, Exh. B;
[8] *See* Def.'s Mot. for Jud. Notice (DE 34)
[9] Def.'s Reply Br. (DE 38)

incompetent to do so, as required under Rule 56(c)(4) to reject declarations filed in support of summary judgment.[10]

As a result of Ms. Cobb's refusal to accept the NMLS records and the sworn testimony that Defendant was licensed to use *ERC* as a trade name in Connecticut at the time of the letter, ERC was forced to address these issues in its reply brief in support its motion for summary judgment, as well as file its motion for judicial notice. These positions were frivolous and served only to multiply these proceedings.

Moreover, Plaintiff ultimately took the position that use of the trade name *ERC* violated the plain language of section 1692e(14) regardless of whether the Banking Department had licensed its use as a trade name, thereby rendering her arguments concerning the licensure meaningless and unnecessary. *See also* Pl.'s Opp. to Mot. for Jud. Notice (DE 38) at 2 (arguing that NMLS records are irrelevant). If Ms. Cobb's counsel wanted another ruling on this argument that the *Kizer* court rejected in 1990, then it was immaterial to her argument whether ERC was so licensed. Ms. Cobb's insistence on objecting to consideration of the evidence of ERC's licensing status can only be seen as unreasonable and an attempt to multiply these proceedings in the hopes of extracting a settlement from ERC.

---

[10] Nor did Ms. Cobb comply with Local Rules 56(a)(2)(i) or 56(a)(3) to support her objections with legal argument and to support denials with evidence refuting the attested facts.

18

## V.     ERC has a clear right to recover its attorneys' fees incurred to have the NMLS records admitted and to prove ERC's licensing status.

To be clear, ERC contends that it should recover the entirety of attorneys' fees and costs it incurred in defending this matter under 28 U.S.C. § 1927, 15 U.S.C. §1692k(a)(3), and the Court's inherent authority due to Ms. Cobb and her counsel proceeding in this matter in bad faith, without any reasonable belief that they would prevail, and for the improper purpose of harassing ERC into paying a settlement. Additionally, ERC is entitled to recover its fees and costs incurred in this action following service of Ms. Cobb's discovery responses because she failed to admit facts, now established, that would have completely foreclosed the claims against ERC.

Federal Rule of Civil Procedure 36 allows parties to limit the issues to be tried to promote the speedy and inexpensive resolution of cases, by allowing requests to admit "facts, the application of law to fact, or opinions about either[.]" Fed. R. Civ. P. 36(a)(1). If the party fails to admit, and the requester shows its truth, then the court, upon motion, *must* award the requester its fees incurred in making such proof, unless: the request was held objectionable, the admission sought was of no substantial importance, the party failing to admit had a reasonable ground to believe that it might prevail on the matter, or there was other good reason. Fed. R. Civ. P. 37(c)(2).

On April 25, 2018, Ms. Cobb responded to ERC's requests for admissions in this matter. Among her responses, Ms. Cobb denied the following requests:

23. Admit that Defendant has registered "ERC" as a trade name under which it collects consumer debt with the Connecticut Banking Department.

19

**Denied.**

**24. Admit that Defendant has registered "ERC" as a service mark for "debt recovery services" with the United States Patent and Trademark Office with Registration Number 50697227.**

**Denied.**

**25. Admit that ERC is located in Florida.**

**Denied. There is an entity called Enhanced Recovery Company, LLC, which is located in Florida, according to the records of the Connecticut Banking Dep't.**

**26. Admit that Defendant has registered "ERC" as a trade name in the state of Florida.**

**Denied. Objection: outside the scope of discovery and irrelevant as to Connecticut.**

**27. Admit that Defendant's license to perform consumer collection services in the state of Florida includes "ERC" as a trade name under which it is licensed to perform such services.**

**Denied; outside the scope of discovery and irrelevant as to Connecticut. Admitted but unnecessary and irrelevant since defendant has admitted that it has not filed a fictitious name registration with any Connecticut town clerk.**

**Pl.'s Resp. to Def.'s Req. for Admiss. (DE 32-3, Exh. 1) at Nos. 23-27. Each of these denials was unreasonable and likely calculated to cause ERC to incur additional costs to prove such undisputable facts before the Court.**

**These matters were of substantial importance in resolving the issues presented in this matter. As noted by the Court, longstanding precedent permits collectors to use names under which they are licensed and which are registered as trade names. Under *Kizer* and *Moorer*, the fact that Defendant was licensed to act**

20

as a consumer collection agency while using *ERC* as a trade name in Connecticut was dispositive of Ms. Cobb's claims.

There is no good reason for Ms. Cobb to have failed to admit these requests. She offered no evidence, whatsoever, that the matters sought to be admitted were, in fact, false. Moreover, there is no indication that she even sought to disprove any of these facts through discovery. Rather, she merely attempted to capitalize on the fact that the Connecticut Banking Department has moved to a digital system of record as a means for challenging the fact that ERC did not have a physical license, other than what any person can print from Banking Department/NMLS website, reflecting that it was licensed as a consumer collection agency in Connecticut.[11]

While Ms. Cobb claimed that ERC's Florida registrations are irrelevant, this is inconsistent with the very case law that she cited in her opposition to ERC's motion for summary judgment. *See* Opp. (DE 35) at 11-12 (*citing Velez*, 2017 WL 1476144, at *11-12). As noted above, and in the Court's order granting summary judgment, that registration of an initialism as a trade name in Florida, where the collector was located, was sufficient to establish that it was its true name in North Carolina as well. *See* Order (DE 42) at 10 (*citing Velez*, 2017 WL 1476144, at *7).

It cannot be claimed that Ms. Cobb had a good faith belief that she would prevail in showing the falsity of these matters. Rather she instead took the position that she would make ERC go through the expense and difficulty of proving these

---

[11] *See* Pl.'s Opp. to Def.'s Mot. for Jud. Notice (DE 38) at 4-5 ("The Defendant asks for permission to supplement its motion for summary judgment with the deposition or certification of a business records custodian. The Plaintiff objects to a self-serving certification, and concludes that even multiple depositions would be unsuccessful to show the truth of the information on the NMLS website.").

matters. ERC did so, and now, pursuant to Rule 37, Ms. Cobb _must_ bear the costs associated therewith, as *required* by the Federal Rules of Civil Procedure.

## VI.    Conclusion

Courts sitting in this Circuit have lamented the fact that the Act, which was enacted to curb very real abuses in the collection industry, has created a "cottage industry" of attorneys who seek to use it to generate statutory damages and attorneys' fees for "some fantasy harm that the statute was plainly not intended to avoid." *See Islam v. Credit Control, LLC*, No. 16-cv-6883 (E.D.N.Y. June 27, 2017). Ms. Cobb did not allege that ERC engaged in any misleading conduct or misrepresentations, she merely claimed that ERC was not entitled to refer to itself by its initials, which had also been registered as a trade name in her state, among others.

Ms. Cobb's actions in pursuing this claim through judgment reflects an attempt to harass Defendant through a superficial interpretation of the Act's provisions. This superficial interpretation, however, is contrary to long-standing legal principles for the claims that she pursued against ERC in this District, a fact that should be known to Ms. Cobb's counsel because it was one of her own cases that established the standards. Accordingly, ERC respectfully requests that this Court award it the reasonable attorneys' fees and costs that it incurred in defending this matter and in proving the facts which Plaintiff refused to admit under Rule 36, Federal Rules of Civil Procedure.

Dated: April 10, 2019.

22

**SMITH, GAMBRELL & RUSSELL, LLP**

*/s/ Scott S. Gallagher*
**Scott S. Gallagher, Esq**
**PHV Bar Number: phv08629**
**50 North Laura Street, Suite 2600**
**Jacksonville, Florida 32202**
**Phone: (904) 598-6111**
**Fax: (904) 598-6211**
**Email: sgallagher@sgrlaw.com**
*Admitted Pro Hac Vice*

**and**

**Michael P. Regan**
**1301 Avenue of the Americas, 21st Floor**
**New York, New York 10019**
**Tel. (212) 907-9720**
**mregan@sgrlaw.com**

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

**Joanne S. Faulkner, Esq.**
**123 Avon Street**
**New Haven, CT 06511-2422**
**Email: faulknerlawoffice@snet.com**
*Attorney for Plaintiff*

*/s/ Scott S. Gallagher*
**Attorney**

23