UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DEBORA COBB

v.                                    CASE NO.  3:17CV 1629 VLB)

ENHANCED RECOVERY COMPANY, LLC            April 30, 2019

**PLAINTIFF'S OPPOSITION TO MOTION FOR SANCTIONS**

Defendant requests sanctions because plaintiff lost this matter on the merits, claiming that plaintiff acted in bad faith and for purposes of harassment. Defendant claims that plaintiff is deserving of sanctions under several theories, each of which requires evidence of both [1] bad faith and [2] purpose of harassment, as defendant contends. Dkt. No. 45 at 6-9.

Defendant claims plaintiff was: "[1] proceeding in this matter in bad faith, without any reasonable belief that they would prevail, and [2] for the improper purpose of harassing ERC into paying a settlement." Dkt. No. 45 at 6.  However,

[1] losing a case is not evidence that plaintiff brought this case in bad faith; Simmons v. Roundup Funding, LLC, 622 F.3d 93, 97 (2d Cir. 2010) (dismissal because FDCPA action was meritless; "The assertion of the claim did not by itself prove bad faith.").

[2] settlement efforts are not for purpose of harassment. N.A.A.C.P. v. Town of E. Haven, 259 F.3d 113, 121–22 (2d Cir. 2001) (informal negotiations and hindsight do not determine whether fees should be awarded); Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 20 (S.D.N.Y. 2015) (same); Harty v. Bull's Head Realty, No. 3:11-CV-01760 (VLB), 2015

WL 1064630, at \*5 (D. Conn. Mar. 11, 2015) (public policy favors settlements).

**Background.** Plaintiff brought this Fair Debt Collection Practices Act case alleging that the Defendant's use of only an unrecognizable initialism violated 15 U.S.C. § 1692e: "the following conduct is a violation of this section: . . . (14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."   Defendant did not, and could not, prove that "ERC" is a true name or a commonly-used acronym, or a Connecticut-registered fictitious name (Conn. Gen. Stat. § 35-1), or that the least sophisticated consumer would recognize it, or that the Connecticut Banking Department had actually approved its use of only the initialism. Instead, over two weeks after it sought summary judgment, defendant sought judicial notice of the contents of a difficult-to-access third party web site that expressly disclaims accuracy ("is not responsible for and cannot verify information contained in NMLS Consumer Access[SM]").

Plaintiff had legal and factual bases to dispute Defendant's reliance on the web site. But this Court granted Defendant's motion for judicial notice, and then its summary judgment motion.  Until then, Plaintiff had "colorable, though unsuccessful, arguments." "Without binding precedent and a definitive ruling on the admissibility of the [site], neither Lauer's nor Trigsted's conduct in pursuing Lauer's § 1692e(2)(A) Claim rise to the level of bad faith." <u>Lauer v. Credit Control Servs.</u>, 2016 WL 1369358, at \*3–4 (D. Utah Apr. 6, 2016).

2

In the absence of binding authority, plaintiff had a colorable legal argument. Indeed, the Eighth Circuit just ruled that a collection agency could use its initials in the letter, where it also used its full legal name: the least sophisticated consumer could add two plus two. Klein v. Credico Inc., No. 18-2776, 2019 WL 1757815, at *1 (8th Cir. Apr. 22, 2019) ("We agree with Credico that CCB is a commonsense abbreviation of Credit Collections Bureau"). Here, defendant had already changed its form letter to include its full legal name, instead of only its initials, in recognition that the claim was arguable. Yet, it chose to litigate over its by-then-abandoned form letter anyway.

Again, although ruling in favor of the collector, one court recognized that there is "no authority in support of the proposition that the ability to locate a corporation on a state's website is a condition, or even a factor, in determining whether the creditor [here, collection agency] was adequately identified." Worley v. AR Res., Inc., No. 4:18-CV-1409 PLC, 2019 WL 480028, at *3 (E.D. Mo. Feb. 7, 2019). Plaintiff's claim was arguable, not meritless.

In Part I, plaintiff discusses why defendant has not met the "bad faith and purpose of harassment" standard. In Part II, plaintiff addresses the fees and costs requests, were the Court to find bad faith and purpose of harassment.

3

**PART I**

**DEFENDANT DOES NOT MEET THE "BAD FAITH" STANDARD**

Defendant relies on the FDCPA, as well as 28 U.S.C. §1927, and the inherent authority of the court, as the basis for the sanctions application. These provisions include a standard of "bad faith" which defendant does not meet. In order to recover a fee award under a "bad faith" standard, defendant must present "clear and convincing" evidence. Kerin v. U.S. Postal Service, 218 F.3d 185, 191-92 (2d Cir. 2000). "General characterizations of the nature of the losing party's behavior, unaccompanied by specific reference to bad faith conduct, are not enough." Id. at 192. The Court must find that plaintiff's actions were "devoid of merit" accompanied by "detailed findings" with respect to improper motive. Id. Where, as here, there was a colorable basis for the plaintiff's position – it has "some legal and factual support" – bad faith is absent. Id. at 190 n.2. Sanctions may be imposed only when the court finds "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." Agee v. Paramount Commc'ns, Inc., 114 F.3d 395, 398 (2d Cir. 1997). "[B]ad faith may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012) (internal quotation marks and citations omitted).

The Second Circuit confirmed the above standards when it affirmed sanctions against a lawyer plaintiff who had engaged "in numerous frivolous and

vexatious actions . . . over the course of this [FDCPA] litigation." <u>Huebner v.</u> <u>Midland Credit Mgmt., Inc.</u>, 897 F.3d 42, 55 (2d Cir. 2018), <u>cert. denied</u>, 139 S. Ct. 1282 (2019). "To impose sanctions under [§ 1927], a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." <u>Id.</u> (citation and internal quotes omitted). Plaintiff's claims herein were not "entirely without color" and nothing (much less clear evidence) shows bad faith, such as harassment or delay.  Merely bringing an unsuccessful claim does not show bad faith or purpose of harassment. <u>Hogue v.</u> <u>Allied Collection Serv., Inc.</u>, No. 216CV1620 JCMVCF, 2018 WL 4286173, at *2 (D. Nev. Sept. 7, 2018) (unpersuasive legal arguments do not establish bad faith).

Since defendant has presented no "clear and convincing evidence" of either bad faith or improper motive, but mere speculation, there is no basis for a fee award under any of the defendant's theories.

<u>28 U.S.C. SECTION 1927 STANDARDS ARE NOT MET</u>

"On its face, § 1927 only applies to actions that result in unreasonable and vexatious *multiplication* of proceedings. This necessarily excludes a *filing* of a baseless complaint, which is properly analyzed under Fed. R. Civ. P. 11." <u>Gust,</u> <u>Inc. v. Alphacap Ventures, LLC</u>, 905 F.3d 1321, 1328 (Fed. Cir. 2018) (opining "that the Second Circuit would join the 'unbroken band of cases' excluding baseless filing of a complaint from supporting an award under § 1927.") Filing the complaint was not multiplying the proceedings.

Nor was there any "multiplication" herein. The record shows that these simple proceedings consisted of a complaint and answer, an amended complaint and answer, a planning report, a settlement conference requested by the parties (unsuccessful), and defendant's vigorously opposed motion for summary judgment. There were no depositions or interlocutory motions. Neither party presented a discovery dispute to the Court, even though plaintiff posed eleven interrogatories, nine production requests, and eleven admission requests and defendant served even more: eighteen interrogatories, twenty-four production requests and twenty-eight requests for admissions.

The absence of any evidence of multiplication of proceedings after filing the complaint is fatal to the §1927 basis for defendant's fee motion. 28 U.S.C § 1927 is not available in the circumstances of this case. Sakon v. Andreo, 119 F. 3d 109, 114 (2d Cir. 1997), citing Shafii v. British Airways, PLC, 83 F.3d 566, 571 (2d Cir. 1996) (§ 1927 sanctions to be awarded only "when there is a clear showing of bad faith on the part of the attorney"); Keller v. Mobil Corp., 55 F.3d 94, 99 (2d Cir. 1995) (to warrant sanctions under § 1927, attorney's actions must be "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay" (internal quotation marks omitted)). Plaintiff's amended complaint was not objectively frivolous. It did not "lack[] an arguable basis in law." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) (citation and internal quotation marks omitted).

Notably, in response to discovery, Defendant listed nine other suits that

had been filed against it as of February 12, 2018, based on its failure to disclose its full legal name in collection letters, brought in New Jersey, New York, Pennsylvania, and Texas. Plaintiff was not alone in her perception that hiding defendant's real name violated the FDCPA's general prohibition against deception. Indeed, to avert future liability, shortly before this suit Defendant had already changed the form letter to include its full name as well as its initials, Dkt. No. 11 at 4, ¶¶ 21-23.

## DEFENDANT DOES NOT MEET THE "INHERENT POWER" TEST

The difference between §1927 and the court's "inherent power" is that §1927 sanctions may be awarded only against the attorney, while the "inherent power" of the court allows sanctions against the attorney, the party, or both. Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986). One seeking fees under the "inherent power" exception to the American Rule must present clear and convincing evidence of bad faith, and the court must make detailed findings. Id. at 1273.

Defendant inquired into plaintiff's own motives in its interrogatories and got nothing that would show bad faith or purpose of harassment:

*****

9. Identify all ways in which you were confused or misled upon reading the letter attached as Exhibit 1 to the Amended Complaint.

## RESPONSE:

I did not know who the sender was because it concealed its true name, and was

7

concerned that the letter might be a scam.

17. Identify any way in which determining your response to the letter attached to the Amended Complaint as Exhibit 1 was inhibited by the use of ERC to refer to Defendant.

**RESPONSE:**

Objection; outside the scope of discovery, irrelevant, and not related to any claim or defense since the standard is the least sophisticated consumer, and I am acting as a private attorney general to protect the least sophisticated consumer. I did not want to deal with a scam, with an unknown company, or with one that concealed its true name.

18. State all reasons why You believe that the use of ERC to refer to Defendant in the letter attached to the Amended Complaint as Exhibit 1 was a material misrepresentation.

**RESPONSE:**

It need not be material because it violates 15 U.S.C. §1692e(14) which says it "is" a violation to use any name other than the collector's true name. A consumer would be confused about who "ERC" is and whether to pay a company that concealed its name or appeared to be a scam or illegitimate.

**\*\*\*\*\***

Since defendant has not pointed out any "clear and convincing evidence of bad faith" on the part of either attorney or counsel, the Court should not exercise its inherent power to impose sanctions.

**THE MOTION FOR FDCPA FEES FAILS**

15 U.S.C. §1692k(a)(3) provides: "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."  The section allows an award only against the party, not against her attorney. Hyde v. Midland Credit Mgmt., Inc., 567 F.3d 1137, 1141 (9th Cir. 2009). The provision is limited to an action "brought" in bad faith and "brought" for purposes of harassment. Defendant has not met its burden to substantiate either prong.

"Bring an action" means "To sue; institute legal proceedings." Black's Law Dictionary 205 (8th ed. 2005). Congress confirmed this limiting usage in other provisions of the FDCPA. For example, a debt collector may "bring" an action only in certain venues. 15  U.S.C. § 1692i.  Similarly, an FDCPA action can be "brought" in any appropriate court, and only within one year of the violation. 15 U.S.C. § 1692k(d).  The word "brought" grammatically refers to the time when the action was filed, not to any later conduct. Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006) (an action is "brought" when it is tendered to the clerk for filing).

The Second Circuit has interpreted § 1692k(a)(3) to permit an attorney's fee award to a defendant  "only upon" such a finding of bad faith and purpose of harassment.  Savino v. Computer Credit, Inc., 164 F.3d 81, 88 n.3 (2d Cir. 1998). Defendant acknowledges this standard, but provides no evidence or factual basis

9

to support the contention that this action was brought in bad faith and for purpose of harassment. Jones v. Weiss, 95 F. Supp. 2d 105, 111 (N.D.N.Y. 2000) (inadequate evidence to support purpose of harassment); Countryman v. Solomon and Solomon, 2000 WL 156837, at *3 (N.D.N.Y. Feb. 8, 2000) ("The absence of sufficient evidence in this case that plaintiffs believed their action to be without merit or was motivated purely by a desire to harass the defendants, prevents the making of an award under 15 U.S.C. § 1692k(3)(3)").

In Bezpalko v. Gilfillan, Gilpin & Brehman, 1998 WL 321268 (E.D. Pa. 1998), the court refused to find bad faith even though plaintiff's claims were barred by controlling Third Circuit authority. See also Reibe v. Juergensmeyer & Assoc., 979 F. Supp. 1218, 1222 (N.D. Ill. 1997) (consumer, though the losing party, did not bring action in bad faith to harass in view of unique nature of the claim and the current debate as to the scope of FDCPA coverage). In Knowles v. Credit Bureau of Rochester, 1992 WL 131107 (W.D.N.Y. 1992), the court refused to find bad faith/purpose of harassment even though the collector's attorney had made an effort to demonstrate compliance with the FDCPA before the action was brought, citing Mendez v. Apple Bank Savings, 541 N.Y.S.2d 920, 924 (N.Y. City Civ. 1989): "In the absence of any evidence that the plaintiff believed his action to be without merit or was motivated purely by a desire to harass [the defendant], sanctions under this provision are not warranted." In Sibley v. Debt Locators & Liquidators, Inc., CA 96-3343-M1 (M.D. La. Sept. 5, 1997), aff'd, Sibley v. Debt Locators & Liquidators, Inc., 149 F.3d 1175 (5th Cir. 1998)  the court refused to

10

find bad faith even though the plaintiff's claim for damages was not credible. See also <u>Conley v. KCA Financial Services, Inc</u>., 931 P.2d 808, 810 (Or. App.1997) (dismissal for failure to state a claim insufficient basis to award fee).

Defendant's speculation as to bad faith, and as to purpose of harassment, must fail absent objective proof. "Though it may believe that the suit was brought for vindictive purposes, Safeguard offers no objective proof to substantiate this allegation." <u>E.E.O.C. v. Safeguard Chem. Corp.</u>, 166 F. Supp. 2d 810, 815 (S.D.N.Y. 2001). Plaintiff had at least colorable legal and factual support for her claim that defendant violated the FDCPA. The mere fact that the Court ultimately did not accept plaintiff's position does not demonstrate that the action was brought either in bad faith or for the purpose of harassment.

## DEFENDANT DID NOT COMPLY WITH RULE 11

Defendant mentions Fed. R. Civ. P. 11 in passing (Dkt. No. 45 at 7) but does not otherwise brief or argue Rule 11, no doubt because it made no effort to comply with the preconditions of Rule 11(c)(2). Rule 11 sanctions are judged under an objective reasonableness standard and are appropriate only when it is patently clear that a pleading has no chance of success. <u>See</u> <u>Ted Lapidus, S.A. v. Vann</u>, 112 F.3d 91, 96 & n.6 (2d Cir. 1997); <u>Int'l Telepassport Corp. v. USFI, Inc</u>., 89 F.3d 82, 86 (2d Cir. 1996).  In <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412 (1978), the Court rejected the position "that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."

This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.  No matter how

11

honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable.  Decisive facts may not emerge until discovery or trial.  The law may change or clarify in the midst of litigation.  Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

434 U.S. at 422. "To take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII." Id.  The same reasoning applies to Congress's efforts to promote vigorous private enforcement of the FDCPA.

> The Second Circuit agrees that hindsight is not a basis for Rule 11 sanctions.
>
> "[H]owever faulty," his positions "were not so untenable as a matter of law as to necessitate sanction. Nor did they constitute the type of abuse of the adversary system that Rule 11 was designed to guard against." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990); see also *Securities Indus. Ass'n v. Clarke*, 898 F.2d 318, 321 (2d Cir. 1990) ("A distinction must be drawn between a position which is merely losing, and one which is both losing and sanctionable." (internal quotation marks omitted)); cf. *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 830-31 (2d Cir. 1992) (reversing an award of sanctions on the ground that, in the absence of controlling authority to the contrary, the party had a good faith basis to press a legal argument supported by a single decision of a state court).

Salovaara v. Shoemaker, 222 F.3d 19, 34 (2d Cir. 2000). Where, as here, plaintiff has an arguable legal position, the claim is not frivolous under Second Circuit standards.

In any event, Defendants did not even move for Rule 11 sanctions. Nuwesra v. Merrill Lynch, Fenner & Smith, Inc., 174 F.3d 87, 94 (2d Cir. 1999), confirmed

12

that a court may impose sanctions under F. R. Civ. P. 11(c) only upon compliance with the terms of the Rule. No motion complying with Rule 11(c)(2) was made in this matter. Since defendant did not comply with the Rule, there is no basis to award Rule 11 sanctions to defendant.

## SETTLEMENT EFFORTS ARE COMMENDABLE, NOT CONDEMNABLE

Defendant's claim of harassment is based only on plaintiff's "incessant settlement demands to ERC." Dkt. No. 45 at 14. Defendant views this as "the improper purpose of harassing ERC into paying a settlement." Dkt. No. 45 at 6, 23. Fed. R. Evid. 408 (a) (1) precludes the use of settlement offers "to prove or disprove the validity or amount of a disputed claim." Settlement offers are encouraged by public policy. Harty, 2015 WL 1064630, at *5.

Rather, the settlement initiatives suggest that plaintiff aimed at the twin goals of judicial economy and implementation of Fed. R. Civ. P. 1 to secure the speedy and inexpensive determination of the proceeding.

This case was brought under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692-1692o, pursuant to which plaintiff sought only the statutory damages of $1,000. Yet, defendant decided to incur upwards of $40,000 to defeat this modest sum, even though it had already changed the offending letter. Plaintiff should not be sanctioned for defendant's persistent refusal to settle, which would have stanched the flow of fees on both sides at significantly less than $40,000, indeed not more than $4,000, per the Gallagher affidavit. Dkt. No. 46-1 at 6 ¶ 23.

13

Strong public policy encourages settlements.  "As any litigator or judge can attest, the best case is a settled case. . . . In a very  real sense,  all  of  the parties  --  and  the  court  as   an institution  --  win when litigation  is  settled amicably  short  of trial."  Mathewson Corp. v. Allied  Marine  Ind., Inc., 827 F.2d 850, 852, 857 (1st Cir. 1987). "[S]ettlements . . . represent compromise and conservation of judicial resources, two concepts highly  regarded  in   American jurisprudence." Anita Foundations v. ILGWU Nat'l Retirement F., 902 F.2d 185, 190 (2d Cir. 1990).

"Defendants, like the courts, have an interest in peace; once there is no more dispute, there is no case. Both the parties and the court may save the costs of litigation." Alliance to End Repression v. City of Chicago, 820 F.2d 873, 878 (7th Cir. 1987). In Alliance, "only the desire of [the party] to obtain an advisory opinion led them to decline the City's offer of settlement." "The attorney's time after that date, devoted to the pursuit of judicial advice (at the expense of two plaintiffs), is not compensable." The court recognized that "a precedent may be valuable beyond price," but it "must be a byproduct of the resolution of a real controversy." Here, because its use of an obscure initialism without its full name was attracting lawsuits, the defendant prudently had changed its form letter; its pursuit of a judgment herein was nothing more than pursuit of an uncompensable advisory opinion.

No sanctions should be awarded based on defendant's shortsighted determination to litigate a moot issue to obtain an advisory opinion, and incur

14

upwards of $40,000 in fees when it admittedly rejected $4,000 (or less before suit) or $1,000 plus a fee/cost application at any time after March 8, 2018. Dkt. No. 46-1, ¶¶ 13, 23, 25.

In this case, it was defendant's own conduct in rejecting early and often settlement initiatives that was the principal cause of its own counsel fees, incurred despite plaintiff's "incessant settlement demands" that were meant to preclude, and should have precluded, its expense. Settlement efforts were not blameworthy in Cabala v. Morris, No. 3:09-CV-651 VLB, 2012 WL 3656364, at *4 (D. Conn. Aug. 24, 2012), aff'd sub nom. Cabala v. Crowley, 736 F.3d 226 (2d Cir. 2013). "[T]he Court cannot conclude that Attorney Faulkner was simply pursuing her own pecuniary interest in accruing additional attorney's fees . . . as Defendant contends." Id.

"It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. " Moreno v. City of Sacramento , 534 F.3d 1106, 1112 (9th Cir. 2008).

The parties requested an early settlement conference. Dkt. No. 17. Defendant's own documents show that it did not comply with Judge Richardson's order to exchange settlement offers. Dkt. No. 46-1 at 5 ¶ 19, and 6 ¶ 13.  Defendant and its counsel flew to Hartford in the teeth of a blizzard, and put

15

nothing on the table, in defiance of Judge Richardson's order, wasting his time as well as the parties'.  In view of defendant's intransigence, it is not plaintiff who should be sanctioned.

## PART II

## COSTS ARE NOT SUBSTANTIATED

Defendant requests costs based on its small print coded statement: "Billed and Unbilled Recap of Cost Detail." Dkt.  No. 46-1 at 26-27. Only nine of the eighteen cost entries were incurred by any attorney appearing in this case, Attorney Gallagher. At least three of the eighteen entries are for secretarial overtime; these seem to have been invoiced, but not paid by the client; such clerical items cannot be charged to the plaintiff either. Another three of the entries are for express delivery service, also seemingly invoiced but not paid. Defendant chose an expensive method of mailing, but plaintiff cannot be assessed for this choice of overhead. There are entries for Secretary of State (1), Pacer (3), and Westlaw (6), with no explanation of whether or how they relate to this case.

The two remaining cost entries are for Attorney Gallagher's travel ($1,067.47) and mileage ($16.36) from Florida for the March 6 settlement conference.  He "is not entitled to fees for travel time, he is not entitled to recover his $555.01 in costs related to travel between Royersford and Hartford. Because competent counsel was available within the district, these travel costs were not reasonably incurred. " Harty, 2015 WL 1064630, at *12. Since defendant was

16

represented by Attorney Regan, located in New York City, Attorney Gallagher's

expenses from Florida are not awarded in this district.

## THE FEE MOTION IS IMPROPERLY SUBSTANTIATED

First, as with the travel costs, Attorney Gallagher's time records include his

travel for a settlement conference on March 6, 2018, between Florida and

Hartford, totaling 15.4 hours. "[H]ours spent traveling by out-of-district attorneys

into the district are not hours 'reasonably expended' where competent counsel is

available within the district." Harty, id.

Moreover, "courts have found that attorney's fees should only be awarded

from the time that the attorney was admitted to practice before the court where

the matter was pending." Stevens v. EOS CCA, No. 516CV01076 MADATB, 2017

WL 1423242, at *4 (N.D.N.Y. Apr. 21, 2017). Thus, any time expended by Attorney

Gallagher before January 3, 2018, may be deducted from the fee request.

Second, to the extent that legal work was done in Florida by attorneys not

admitted in the case, and not familiar with Connecticut law, those hours should

likewise be denied.  "That absence of *pro hac vice* status gives the Court pause.

*Pro hac vice* rules exist for a reason: To ensure that an attorney is eligible and

qualified to practice law in this district. Without filing a motion for admission *pro*

*hac vice* with the proper supporting documentation, this Court can not conclude

that Ku was *ever* qualified to practice law here." Gilmore v. Elmwood S., L.L.C.,

No. CIV.A. 13-37, 2015 WL 1245770, at *3 (E.D. La. Mar. 18, 2015).

Defendant has not submitted "for each attorney, the date, the hours expended, and the nature of the work done," as required by New York Ass'n of Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). There is no breakdown, by attorney or paralegal, of the 137.36 hours. For instance, other than by painstakingly parsing the ten pages of billing records, one cannot ascertain the time spent by paralegals, or by attorneys who were not admitted in Connecticut state or federal court (Rivera, Kalkines).

Defendant submitted no substantiation as to the billing rate for any of the attorneys. Neither Rivera nor Kalkines submitted an affidavit as to legal education, length of time in practice, experience with FDCPA cases, or prior fee awards. Mr. Gallagher's subjective belief that the rates were reasonable, or his general claim of familiarity with billing rates "in the Northeast," are insufficient. Dkt. No. 46-1 at 3-4,  ¶ ¶ 8, 11.

The unusually high paralegal hourly rates of $159.61 and $170, interspersed in the billing records, are entirely unsubstantiated.

Defendant had previously filed dispositive motions in the "Hsu and Harley matters" involving the same fictitious name issue. (Dkt. No. 46-1 at 15, entry for 5/24/18).[1] Yet, defendant claims to have incurred over 50 hours [including noncompensable paralegal time formatting the document] on its motion for summary judgment between 5/24/2018 and 6/14/2018.  Even a reduced calculation was disapproved by this Court in similar circumstances. Harty, 2015 WL 1064630,

---

[1] Harley v Enhanced Recovery Corp. No. 17 cv1238 (E.D.N.Y.) Dkt. No. 15.

18

at *11.

All of the 50-hour entries generally refer to the motion for summary judgment, with no details as to what aspect or subject matter was being addressed, too vague for any award. As this Court noted in Harty, 2015 WL 1064630, at *9, "'Fees should not be awarded for time entries when the corresponding description of work performed is vague and therefore not susceptible to a determination of whether the time billed was reasonably expended.' *Connecticut Hosp. Ass'n v. O'Neill,* 891 F. Supp. 687, 690 (D. Conn. 1994) (internal quotations omitted and citation omitted).'"

Because there was no bad faith or purpose of harassment, no fees should be awarded. Because the fee request was not properly substantiated, either for rates or time expended, no fees should be awarded.

## FAILURE TO ADMIT

In Part V of its brief, Defendant asks for fees and costs after plaintiff's April 25, 2018, failure to admit certain items: five of its twenty-eight admission requests. Nowhere does it specify what fees or costs were incurred *thereafter* in making its proof. The costs and fee records are uninformative, leaving plaintiff unable to address details, and leaving it to the Court to speculate and calculate based on non-text-searchable declarations and exhibits.  "Judges are not like pigs, hunting for truffles buried in briefs." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).

19

Scrutinizing the billing records, Attorney Gallagher spent ½ hour on April 10 – before receiving plaintiff's responses to admission requests -- to "arrange for obtaining certified copies of licensure files." That clerical task is not subject to an award of fees and was not incurred as a result of plaintiff's response to admission requests.

Significantly, defendant did not ask plaintiff to admit anything about the NMLS website. It did not ask plaintiff to admit the genuineness of any document, or even attach any document it later used for summary judgment. Dkt. Nos. 32-1 at pp. 10-20; 32-2 at p. 7.  As to Admission 23 it did not ask for admission of the underlying fact at issue -- whether the Banking Department had approved the use of "ERC" without also using its full legal name -- but merely whether "ERC" was registered.

Defendant did not submit a business records affidavit from the Banking Department that it had reviewed and approved the fictitious name.[2] It did not even seek permission to do so until after filing its summary judgment motion. Dkt. No. 34 p. 3.  Instead, it relied only on a third party web site (NMLS) to show that it had registered the trade name ERC with the Connecticut Banking Department. This Court took judicial notice thereof, overruling plaintiff's objections under Fed. R. Evid. 201 to defendant's reliance solely on a difficult-to-

---

2. Conn. Gen. Stat. § 36a-801 (i) . . . No licensee may use any name other than its legal name or a fictitious name approved by the commissioner, provided such licensee may not use its legal name if the commissioner disapproves use of such name.

access third party site that expressly disclaims accuracy ("cannot verify information contained in NMLS Consumer Access$^{SM}$").

As Defendant points out, such fees may not be awarded if the party failing to admit had a reasonable ground to believe that it might prevail on the matter, or there was other good reason. Fed. R. Civ. P. 37(c)(2).  Before this Court granted the motion for judicial notice, defendant made no effort to prove whether the Banking Department had actually approved defendant's use of the obscure initialism without also disclosing its full name.

Finally, defendant did not attempt to resolve the issues, or its fee request, as required by D. Conn. L. Civ. Rule 37(a) before filing its motion based on Rules 26-37. The request for Rule 37 sanctions might have been avoided.

### CONCLUSION

Even though the Court did not agree with Plaintiff's position, her position was not so devoid of merit as to warrant awarding attorney's fees or costs as sanctions under any theory.

THE PLAINTIFF

*Joanne S. Faulkner*

BY_____
JOANNE S. FAULKNER ct04137
    123 Avon Street
    New Haven, CT 06511-2422
    (203) 772-0395
    j.faulkner@snet.net

21